UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY P. PERROTTE,<br><br>  Plaintiff,<br><br>  v.<br><br>STACEY JOHNSON, et al.,<br><br>  Defendants. | Case No.: 1:15-cv-00026-SAB (PC)<br><br>ORDER DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS INTENT TO PROCEED ON THE CLAIM FOUND TO BE COGNIZABLE<br><br>[ECF No. 1] |

Plaintiff Jeffrey P. Perrotte is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed the instant complaint on January 7, 2015. (ECF No. 1.)

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff names Jean Leflore, Stacey Johnson, Cindy Hebron, Kathleen Allison and Does 1 through 10 as Defendants in this action.

Plaintiff contends that Defendants engaged in retaliation for Plaintiff exercising his First Amendment rights to file grievances.

In May 2008, Plaintiff interviewed with Defendants Hebron, Leflore and Johnson for a mentor position with Walden House at California Substance Abuse and Treatment Facility (CSATF). Plaintiff was questioned regarding the number of prison grievances and lawsuits he filed in the past against prison staff. He was informed that if selected as a mentor candidate at the Walden House, he would be expected to use different methods in resolving any grievances other than the standard 602 inmate grievance procedure.

In October 2008, Plaintiff was called to the Facility Program Office where he was interviewed by Defendants Hebron, Leflore and Johnson. Plaintiff was questioned again about his history of filing

grievances and in assisting other inmates in accessing the courts. Plaintiff was asked about a recent inmate grievance he filed regarding placement in a janitorial vocational training program and if he would be willing to refrain from filing grievances if he were accepted into the mentor program.

In November 2008, Plaintiff was accepted into the Walden House Substance Abuse Treatment Program as a mentor candidate. During orientation, Plaintiff was taught the tools of a therapeutic community and the family values of Walden House. During the mentor meetings, it was stressed to Plaintiff that grievances were to be resolved using the tools of the Walden House.

In August 2009, Plaintiff was called to the supervising counselor's office and Defendants Hebron, Johnson and Leflore were furious and yelled at Plaintiff regarding an article that had been published on July 22, 2009, in numerous newspapers which was critical of the Warden and the policies at SATF. Defendants called Plaintiff a liar for not mentioning the article (which had been submitted prior to interviewing for the mentor program) that violated the "family values" of the Walden house. A couple hours later, Plaintiff was "grouped" by all the mentors for writing the article and violating Walden House "family values" and was placed on therapeutic contract with the mentors. Plaintiff had to apologize to Defendants, give seminars to core groups, give seminars to resident clusters on trust, prepare a presentation to the mentors on trust, clean showers, and restrain from any mentor activities for thirty days. Plaintiff was also removed from the band program and cluster responsibilities by his supervising mentor, Senior Mentor John Ray.

Plaintiff began receiving many complaints from residents regarding inappropriate conduct by Defendant Johnson during group sessions. Plaintiff requested a meeting with Defendant Johnson to address the concerns. The meeting took place in September 2009, in Johnson's office and Plaintiff was informed, "You represent Walden House, not the residents. Your job is to put any complaints about me to rest, not stir the pot. My expectation is that you will do your job. Don't bring these complaints to me again." Plaintiff contacted Defendant Leflore on the yard and told him about the complaints and Defendant Johnson's response to Plaintiff. Defendant Leflore told Plaintiff that Johnson was correct and that our role as mentors was to protect Walden House from any scrutiny by the prison administration.

1    In September 2009, during the union of body and mind event, Plaintiff was confronted by
2 Defendant Johnson in the presence of Senior Mentor John Ray.  Johnson was furious that Plaintiff had
3 switched microphones prior to making announcements and prior to performing.  Defendant accused
4 Plaintiff of being a racist and stormed away.
5    Plaintiff was informed by Senior Mentor Ray the following day that Defendant Johnson had
6 discovered that Plaintiff was assisting some residents in filing complaints against her and wanted to
7 get rid of Plaintiff.  Senior Mentor Ray also indicated that Defendants Johnson, Leflore and Hebron
8 were afraid that Plaintiff was going to author an additional newspaper article that was critical of their
9 behavior towards residents and critical of the drug program at the prison.  Senior Mentor Ray
10 informed Plaintiff that assisting residents had to come to an end or he would not be able to protect
11 Plaintiff from Defendants.
12    In February 2010, Plaintiff was threatened by Defendants Johnson and Leflore about assisting
13 residents in filing grievances and petitions in the court.  Plaintiff was instructed to cease these
14 activities immediately.
15    In March 2010, Plaintiff was informed by Walden House Provider, Sue Rudd, that Defendants
16 Johnson and Leflore had asked her to lie regarding Plaintiff's work in the cluster to justify firing
17 Plaintiff and removing him from the program.
18    In July 2010, Plaintiff was told by Senior Mentor G. Scott Holland that Defendant Johnson was
19 "dead-set" on causing Plaintiff harm for helping residents file grievances against her.  Holland
20 bragged that he was having a relationship with Defendant Johnson.
21    In August 2010, Plaintiff requested a meeting with Defendants Johnson, Leflore and Hebron.
22 Plaintiff informed Defendants of the complaints by residents regarding Johnson's conduct and
23 Leflore's unwillingness to address the behavior as Program Director.  Plaintiff requested Defendant
24 Hebron, as the Warden's liaison to Walden House, do something about it.  Defendants began yelling
25 and screaming at Plaintiff that he was just an inmate and would not dictate anything to them.  Plaintiff
26 was warned that if any grievances were filed by Plaintiff, they would take adverse actions against
27 Plaintiff.  Defendant Hebron stated, "You agreed not to file grievances if you were accepted into
28 Walden House Mr. Perrotte.  If you cannot abide by these rules, you will be sent back to B-Yard."  It

4

should be noted, White or Hispanic inmates who were sent back to B-Yard were assaulted by the inmates there for agreeing to inter-racial bunk.  Defendants were aware of this and utilized this as a significant threat for residents.

In September 2010, Plaintiff received state certification as an alcohol and drug counselor and requested his pay be adjusted to be paid equivalent to other mentors who had received state certification.  The request was denied.

On October 23, 2010, Plaintiff filed a CDCR-602 inmate appeal challenging the pay scale and mentor program.  The appeal was assigned to Defendant Leflore who refused to answer the appeal.  Plaintiff forwarded a request to prison administration to compel Defendant Leflore to answer the appeal which infuriated Defendant who contacted Plaintiff on the yard and threatened that "your days here are numbered."

On approximately November 1, 2010, Plaintiff was paged to an "emergency" mentor meeting.  The mentors present indicated that Defendants Hebron, Leflore and Johnson had requested they "group" Plaintiff regarding the latest grievance and for violating the concepts of "family value."  Plaintiff was placed on contract again and ordered to perform additional tasks to make amends for filing the grievance.

On approximately November 3, 2010, Walden House provider, Sue Rudd, warned Plaintiff that Defendant Johnson had told her that she was going to give Plaintiff a rules violation to "teach" him a lesson for filing the grievance on the mentor program in order to get Plaintiff fired.  Ms. Rudd stated Johnson was very upset because Plaintiff was assisting some residents file complaints against Defendant Johnson and other Walden House staff.

On December 29, 2010, Plaintiff sent a letter to Doctor V. Eisen, Chief Executive Officer, Walden House, complaining about Defendants Johnson and Leflore.  A copy of this letter was sent to Defendant's supervisor, Wayne Garcia, Defendant Hebron and Warden at SATF.

On February 19, 2011, Plaintiff served a CDCR-22 form on Defendant Leflore for not adjudicating Plaintiff's 602 inmate appeal on the mentor program as required by CDCR rules.  Defendant Leflore snatched the form out of Plaintiff's hands and walked away stating, "I told you that you would regret this."

1   On March 10, 2011, Plaintiff was "confronted" by some of the mentors for pursuing the appeal
2   on the mentor program and told to quit or stop filing grievances, writing Doctor Vitka, and helping
3   residents with their grievances.
4   On March 18, 2011, Plaintiff went to facility captain V. Ramirez's office and filed a complaint
5   against Defendant Johnson and requested internal affairs investigate her inappropriate relationship
6   with mentor S. Holland for smuggling contraband into the prison.  Captain Ramirez indicated he
7   would contact internal affairs.
8   On March 25, 2011, Plaintiff again went to captain Ramirez's office and informed him of
9   Defendant Johnson's knowledge of his "confidential complaint."  Captain Ramirez indicated that he
10  would look into it.
11  On May 29, 2011, Plaintiff was having a conversation with Defendant Leflore when Defendant
12  Johnson walked up and started yelling at Plaintiff for failing to move a resident.  Defendant Johnson
13  stated, "Don't forget, you're just an inmate!"  Johnson further stated, "I know your case, you're
14  nothing but a mother-fucking drunk!"  I immediately asked Defendant Leflore to address this outburst
15  from Johnson as her immediate supervisor and Leflore just walked away.  I told Defendant Johnson I
16  was immediately filing a staff misconduct complaint against her and Johnson stated, "You're going to
17  regret this and you're going to regret ratting on me."
18  On May 29, 2011, Plaintiff immediately filed a staff misconduct appeal against Defendant
19  Johnson.
20  On April 1, 2011, Plaintiff received three separate laudatory memorandum from Walden House
21  provider's Sue Rudd, Mona Velasquez and Doris Trapp who were troubled with the actions of
22  Defendant Johnson.  Sue Rudd was immediately fired and ordered off prison grounds when she told
23  Defendants she was going to tell the truth about their retaliatory conduct towards Plaintiff.  Mona
24  Velasquez and Doris Trapp were admonished for authoring memorandums.
25  On April 3, 2011, Plaintiff was served a CDC-115 Rules Violation Report authored by
26  Defendant Johnson alleging "Behavior That Could Lead to Violence."  This fraudulent disciplinary
27  report was logged as F-11-03-013 and was motivated by Plaintiff filing the staff misconduct appeal.
28

On April 8, 2011, Plaintiff was called before Senior Hearing Officer Lieutenant James who found Plaintiff not guilty of the charges filed by Defendant Johnson. Correctional officer E. Guillen testified that the allegations by Defendant Johnson were not true as officer Guillen witnessed the interaction referenced in the CDC-115. Lieutenant James found the charges to be in retaliation for Plaintiff filing the staff misconduct appeal.

Approximately two days later, Plaintiff was confronted by Defendant Johnson who stated, "you got lucky on the 115 but I have something else planned for you."

On April 10, 2011, Plaintiff again contacted the facility captain to inquire as to when Plaintiff would be interviewed by internal affairs and to inform the captain of the continued threats by Defendants Johnson and Leflore.

On April 12, 2011, Plaintiff authored and forwarded a second letter to Doctor E. Eisen, Walden House, regarding the actions of her employees.

On April 14, 2011, former Walden House provider, Sue Rudd, emailed Plaintiff's website detailing retaliatory actions by Defendants Johnson and Leflore against Plaintiff for engaging in protected conduct.

On April 16, 2011, Plaintiff was contacted on the yard by Lieutenant Alva who stated, "Did you get your new chrono yet?" Plaintiff indicated that he did not know what Alva was talking about and he stated, "Oh, you soon will."

On April 19, 2011, Plaintiff was paged to the program office and placed in a cage. Plaintiff was informed by DeOchoa that he was being rehoused in administrative segregation pending investigation into allegations Plaintiff made against Defendants Johnson, Leflore, and other Walden House employees. DeOchoa approached Plaintiff and stated, "You probably shouldn't have filed the grievances and 'ratted' on Stacey."

Also, on April 19, 2011, the administrative segregation sergeant approached the cage and stated, "This is the guy that likes to file grievances?" Shortly thereafter, the sergeant brought a large inmate out of a cell and placed him in the cage next to me. Inmate Stroud told Plaintiff the Sergeant wanted him to come and talk to Plaintiff about being his cellie. Inmate Stroud then stated, "They brought your Jewish food to the cell already, I'm Jewish too." The sergeant came back and said,

7

"Okay let's cell them up." Both of them were cuffed-up and brought to a cell. After the cell door was closed, inmate Stroud squeezed by Plaintiff to make sure he was the first to be uncuffed. As soon as the handcuffs were removed from inmate Stroud, he instantaneously began striking Plaintiff in the face and torso area. The escorting officer, Megallon, immediately began spraying o.c. pepper spray into the cell and covered Plaintiff's body with spray. Plaintiff was still cuffed and was now being struck without the ability to see. Once the assault ended, Plaintiff was pulled from the cell and escorted to a shower for decontamination. Plaintiff was told, "This is what happens to those who like to tell on staff in ad-seg." Plaintiff was suffering excruciating pain from the assault and from the o.c. pepper spray which covered his entire body including the groan area as Plaintiff was only wearing a pair of boxer shorts. Plaintiff was escorted to a holding cell and the ad-seg sergeant approached and Plaintiff stated, "Nice set-up." He responded, "prove it." After being housed in a different cell, Plaintiff was informed by an officer that inmate Stroud was a level IV inmate (Plaintiff was a level II at the time), a validated Skinhead and member of the Security Threat Group II and that Plaintiff should never have been placed in the cell with Stroud under any circumstances.

On April 20, 2011, Plaintiff was interviewed by the facility F captain. Plaintiff told the captain that he wanted an investigation done on the assault and battery suffered on April 19, 2011. The captain stated, "good luck on that."

Approximately ten days later, Plaintiff was pulled from the ad-seg cell and interviewed by Investigative Services Lieutenant S. Ramirez. During this interview, Plaintiff shared all of the information Plaintiff knew about Defendants Johnson, Leflore and other Walden House employees, also about the retaliation Plaintiff was experiencing for filing grievances by all Defendants. Lieutenant Ramirez took a few notes but then began questioning Plaintiff regarding Plaintiff's daughter, Ashley. Plaintiff asked the Lieutenant why he wanted to know about Plaintiff's daughter and the Lieutenant refused to answer. Plaintiff was returned to the cell and discovered that all of Plaintiff's properly, including legal work, had been removed by investigative services.

On April 27, 2011, Plaintiff appeared before Classification and was retained in ad-seg. Plaintiff requested an investigation regarding the assault and battery suffered on April 19, 2011.

1  On May 10, 2011, Plaintiff was placed in a holding cell by investigative services where
2  Plaintiff's property was in boxes. Plaintiff was given thirty minutes to decide what three boxes, out of
3  six, Plaintiff was going to keep. Plaintiff discovered some of Plaintiff's legal work and property
4  missing and damaged.
5  On May 20, 2011, an officer approached Plaintiff's cell and stated, "The reason you're still in
6  ad-seg is because someone is trying to set you up and mailed in a letter detaining an escape plan and
7  referring to a smuggled cell phone, along with photocopies of police badges." The officer then stated,
8  "We think Stacey Johnson mailed it in."
9  Approximately two days later, Plaintiff received a letter from Plaintiff's wife, Michelle
10 Perrotte, indicating that her, Plaintiff's daughter Ashley, and Plaintiff's father-in-law, Doctor Edward
11 Lambert, had just been interviewed by Special Agent John Santos with the CDCR regarding an escape
12 letter that had been addressed to Plaintiff and intercepted by the prison on April 27, 2011. The letter
13 was purportedly signed by Plaintiff's daughter Ashley with a fake return address in Pasadena,
14 California. CDCR believed that the letter was written to cause Plaintiff significant harm and the
15 investigation did reveal or suggest a possible motive for the origination of the letter with the incident
16 involving Stacey Johnson at the prison.
17 On June 15, 2011, Plaintiff appeared before classification and cleared to be returned to Facility
18 F. Classification indicated they believed Plaintiff was being wrongly accused and did not deserve to
19 be in ad-seg. Plaintiff inquired as to what was being done regarding the retaliation for exercising
20 protected conduct and the committee chairperson indicated that information was confidential.
21 Plaintiff was escorted back to Facility F with the remainder of Plaintiff's property.
22 Approximately four hours later, officers came to the unit where Plaintiff was housed, cuffed Plaintiff
23 and rehoused Plaintiff in ad-seg without the property Plaintiff had in his cell just four hours earlier.
24 Plaintiff was told by the officers that Defendant Johnson had placed a CDCR-128B informational
25 chrono in Plaintiff's file falsely indicating that she did not feel safe with Plaintiff on the facility
26 because, among other statements, "Plaintiff threatened her that Plaintiff was going to send articles
27 about her to newspapers." This CDCR-128B was dated April 13, 2011, just five days after Plaintiff
28 had been found not guilty on the rules violation report issued by Defendant Johnson.

1  Approximately a week later, Plaintiff appeared before classification and told, "We believe this
2  chrono is retaliation by Johnson and that it is safer for you to be away from her before she does
3  something even worse to you. You will remain in ad-seg until you are transferred.
4  On August 5, 2011, Plaintiff filed an additional staff misconduct appeal on Defendant Johnson
5  requesting an investigation into Johnson's retaliatory actions. The institution refused to process the
6  appeal and after two attempts, Plaintiff sent the appeal to the Chief of Inmate Appeals in Sacramento,
7  California, where it was again rejected. Plaintiff informed the Chief of Inmate Appeal of the
8  investigation that Defendant Johnson mailed an escape letter to Plaintiff which caused Plaintiff
9  significant injury, as well as filing the false disciplinary and the challenged CDCR-128B. Plaintiff's
10 request for the appeal to be processed, as required by CDCR policies, was rejected.
11 On August 11, 2011, Plaintiff was transported to the California Men's Colony in San Luis
12 Obispo, California. Upon arrival, a significant amount of Plaintiff's property was damaged and
13 missing.
14 In April 2012, one of Plaintiff's Inmate Appeals on Defendant Johnson was granted at the
15 Director's Level of review. This appeal required Defendant to remove reference to the CDC-115,
16 Rules Violation Report, which was dismissed in the interest of justice from the fraudulent CDCR-
17 128B authored by Defendant Johnson on April 13, 2011.
18 On July 10, 2012, Plaintiff received a letter, purportedly from Plaintiff's daughter, speaking
19 of plans to destroy Plaintiff's chances at parole and other outrageous statements. The CDCR special
20 agent that investigated the escape letter was contacted by Plaintiff's counselor and this letter was
21 added to their investigative file. Agent Santos believed the letter was sent by the same source and was
22 motivated by the recent Director's Level appeal grant.
23 On October 10, 2012, Plaintiff appeared before the parole board and the fraudulent (escape)
24 letters and Defendant Johnson's false allegations were discussed at length.
25 On January 3, 2013, Plaintiff received another letter purportedly from Plaintiff's daughter with
26 more outrageous content. This was forwarded to CDCR investigations.
27
28

1    On April 3, 2013, Plaintiff appeared before the parole board who required Plaintiff to address
2 the escape letters sent by Defendant Johnson, as well as Defendant Johnson's false allegations in the
3 CDCR-128B form April 13, 2011.

4    On August 28, 2013, Plaintiff's parole grant was reversed by Governor Brown due in part to
5 the escape letters and false allegations by Defendant Johnson.

6    In October 2013, Plaintiff's attorney spoke with Special Agent John Santos regarding the
7 escape letters used by Governor to reverse Plaintiff's parole grant and Santos stated, "I have
8 determined the letters sent to Mr. Perrotte are fraudulent and intended to set Perrotte up to be denied
9 parole at his upcoming hearings. Plaintiff continues to receive fraudulent letters from the same source.

10   On September 3, 2014, Plaintiff was required, again, to address the referenced letters and
11 Defendant Johnson's fraudulent allegations on April 13, 2011, at Plaintiff's parole hearing.

12   At no time did Defendant Leflore and Hebron exercise their supervisory responsibility and
13 prevent Defendant Johnson from continually retaliating against Plaintiff for exercising protected
14 conduct, and, at times, participated directly in the retaliation.

## III.
## DISCUSSION

### A.    Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Based on Plaintiff's allegations in the complaint, Plaintiff states a cognizable claim for retaliation against Defendants Johnson, Leflore, and Hebron.

**B.     Cruel and Unusual Liability**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

Based on Plaintiff's allegations in the complaint, Plaintiff states a cognizable claim for cruel and unusual punishment against Defendants Johnson and Leflore based on their placement of Plaintiff in the administrative segregation housing unit with a rival cellmate who attacked Plaintiff.

**C.     Supervisory Liability**

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow, 681 F.3d at 989) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of

constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff seeks to impose liability against Defendant Allison based on her position as Warden at SATF. Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory liability claim against Warden Allison. The only basis for such a claim would be respondeat superior, which is precluded under section 1983.

## IV.

## CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable retaliation claim against Defendants Johnson, Leflore and Hebron in violation of the First Amendment, and a cognizable claim for cruel and unusual punishment against Defendants Johnson and Leflore in violation of the Eighth Amendment. Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claim for retaliation against Defendants Johnson, Leflore and Hebron and the cruel and unusual punishment claim against Defendants Johnson and Leflore, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and Defendants, and will forward Plaintiff three (3) summonses and three (3) USM-285 form for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With

respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint. Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff must either:
    a. File an amended complaint curing the deficiencies identified by the Court in this order, or
    b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Johnson, Leflore and Hebron for retaliation in violation of the First Amendment, and against Defendants Johnson

14

and Leflore for cruel and unusual punishment in violation of the Eighth Amendment; and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: __**April 13, 2015**__

UNITED STATES MAGISTRATE JUDGE