UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY P. PERROTTE,<br><br>          Plaintiff,<br><br>     v.<br><br>STACEY JOHNSON, et al.,<br><br>          Defendants. | Case No.: 1:15-cv-00026-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANT HEBRON'S EXHAUSTION RELATED MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>[ECF No. 45] |

Plaintiff Jeffrey P. Perrotte is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff consented to United States Magistrate Judge jurisdiction on January 20, 2015. (ECF No. 4.) Defendant Hebron declined United States Magistrate jurisdiction on October 14, 2015; therefore, this action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Currently before the Court is Defendant Hebron's exhaustion related motion for summary judgment, filed August 4, 2016.[1]

///

///

///

---

[1] Defendants Johnson and LeFlore have yet to be properly served in this action.

1

# I.

# RELEVANT HISTORY

This action is proceeding against Defendants Cindy Hebron, Stacey Johnson, and Jean LeFlore for retaliation in violation of the First Amendment, and against Defendants Johnson and LeFlore for cruel and unusual punishment in violation of the Eighth Amendment.

After insufficient service of the summons and complaint, the United States Marshal is currently in the process of re-serving Defendants Johnson and LeFlore.

As previously stated, on August 4, 2016, Defendant Hebron filed a motion for summary judgment based on Plaintiff's failure to exhaust the administrative remedies.[2] Although Plaintiff requested and received an extension of time to file an opposition, no opposition was filed.[3] Accordingly, the motion for summary judgment is deemed submitted for review without oral argument. Local Rule 230(*l*).

# II.

# LEGAL STANDARD

**A.    Statutory Exhaustion Requirement**

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

---

[2] Concurrently with the motion for summary judgment, Defendant Hebron served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

[3] On November 28, 2016, the Court granted Plaintiff thirty (30) days from the date of service of that order to file an opposition, i.e. December 28, 2016. (ECF No. 56.)

2

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B.    Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants

3

carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

## III.

## DISCUSSION

### A.   Description of CDCR's Administrative Remedy Process

Plaintiff is a former state prisoner who was at the time of filing the instant complaint in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).

### B.   Summary of Allegations Underlying Plaintiff's Constitutional Claims

Plaintiff contends that Defendants engaged in retaliation for Plaintiff exercising his First Amendment rights to file grievances.

In May 2008, Plaintiff interviewed with Defendants Hebron, Leflore and Johnson for a mentor position with Walden House at California Substance Abuse and Treatment Facility (CSATF). Plaintiff was questioned regarding the number of prison grievances and lawsuits he filed in the past against prison staff. He was informed that if selected as a mentor candidate at the Walden House, he would be

expected to use different methods in resolving any grievances other than the standard 602 inmate grievance procedure.

In October 2008, Plaintiff was called to the Facility Program Office where he was interviewed by Defendants Hebron, Leflore and Johnson. Plaintiff was questioned again about his history of filing grievances and in assisting other inmates in accessing the courts. Plaintiff was asked about a recent inmate grievance he filed regarding placement in a janitorial vocational training program and if he would be willing to refrain from filing grievances if he were accepted into the mentor program.

In November 2008, Plaintiff was accepted into the Walden House Substance Abuse Treatment Program as a mentor candidate. During orientation, Plaintiff was taught the tools of a therapeutic community and the family values of Walden House. During the mentor meetings, it was stressed to Plaintiff that grievances were to be resolved using the tools of the Walden House.

In August 2009, Plaintiff was called to the supervising counselor's office and Defendants Hebron, Johnson and Leflore were furious and yelled at Plaintiff regarding an article that had been published on July 22, 2009, in numerous newspapers which was critical of the Warden and the policies at SATF. Defendants called Plaintiff a liar for not mentioning the article (which had been submitted prior to interviewing for the mentor program) that violated the "family values" of the Walden house. A couple hours later, Plaintiff was "grouped" by all the mentors for writing the article and violating Walden House "family values" and was placed on therapeutic contract with the mentors. Plaintiff had to apologize to Defendants, give seminars to core groups, give seminars to resident clusters on trust, prepare a presentation to the mentors on trust, clean showers, and restrain from any mentor activities for thirty days. Plaintiff was also removed from the band program and cluster responsibilities by his supervising mentor, Senior Mentor John Ray.

Plaintiff began receiving many complaints from residents regarding inappropriate conduct by Defendant Johnson during group sessions. Plaintiff requested a meeting with Defendant Johnson to address the concerns. The meeting took place in September 2009, in Johnson's office and Plaintiff was informed, "You represent Walden House, not the residents. Your job is to put any complaints about me to rest, not stir the pot. My expectation is that you will do your job. Don't bring these complaints to me again." Plaintiff contacted Defendant Leflore on the yard and told him about the

5

complaints and Defendant Johnson's response to Plaintiff. Defendant Leflore told Plaintiff that Johnson was correct and that our role as mentors was to protect Walden House from any scrutiny by the prison administration.

In September 2009, during the union of body and mind event, Plaintiff was confronted by Defendant Johnson in the presence of Senior Mentor John Ray. Johnson was furious that Plaintiff had switched microphones prior to making announcements and prior to performing. Defendant accused Plaintiff of being a racist and stormed away.

Plaintiff was informed by Senior Mentor Ray the following day that Defendant Johnson had discovered that Plaintiff was assisting some residents in filing complaints against her and wanted to get rid of Plaintiff. Senior Mentor Ray also indicated that Defendants Johnson, Leflore and Hebron were afraid that Plaintiff was going to author an additional newspaper article that was critical of their behavior towards residents and critical of the drug program at the prison. Senior Mentor Ray informed Plaintiff that assisting residents had to come to an end or he would not be able to protect Plaintiff from Defendants.

In February 2010, Plaintiff was threatened by Defendants Johnson and Leflore about assisting residents in filing grievances and petitions in the court. Plaintiff was instructed to cease these activities immediately.

In March 2010, Plaintiff was informed by Walden House Provider, Sue Rudd, that Defendants Johnson and Leflore had asked her to lie regarding Plaintiff's work in the cluster to justify firing Plaintiff and removing him from the program.

In July 2010, Plaintiff was told by Senior Mentor G. Scott Holland that Defendant Johnson was "dead-set" on causing Plaintiff harm for helping residents file grievances against her. Holland bragged that he was having a relationship with Defendant Johnson.

In August 2010, Plaintiff requested a meeting with Defendants Johnson, Leflore and Hebron. Plaintiff informed Defendants of the complaints by residents regarding Johnson's conduct and Leflore's unwillingness to address the behavior as Program Director. Plaintiff requested Defendant Hebron, as the Warden's liaison to Walden House, do something about it. Defendants began yelling and screaming at Plaintiff that he was just an inmate and would not dictate anything to them. Plaintiff

was warned that if any grievances were filed by Plaintiff, they would take adverse actions against Plaintiff. Defendant Hebron stated, "You agreed not to file grievances if you were accepted into Walden House Mr. Perrotte. If you cannot abide by these rules, you will be sent back to B-Yard." It should be noted, White or Hispanic inmates who were sent back to B-Yard were assaulted by the inmates there for agreeing to inter-racial bunk. Defendants were aware of this and utilized this as a significant threat for residents.

In September 2010, Plaintiff received state certification as an alcohol and drug counselor and requested his pay be adjusted to be paid equivalent to other mentors who had received state certification. The request was denied.

On October 23, 2010, Plaintiff filed a CDCR-602 inmate appeal challenging the pay scale and mentor program. The appeal was assigned to Defendant Leflore who refused to answer the appeal. Plaintiff forwarded a request to prison administration to compel Defendant Leflore to answer the appeal which infuriated Defendant who contacted Plaintiff on the yard and threatened that "your days here are numbered."

On approximately November 1, 2010, Plaintiff was paged to an "emergency" mentor meeting. The mentors present indicated that Defendants Hebron, Leflore and Johnson had requested they "group" Plaintiff regarding the latest grievance and for violating the concepts of "family value." Plaintiff was placed on contract again and ordered to perform additional tasks to make amends for filing the grievance.

On approximately November 3, 2010, Walden House provider, Sue Rudd, warned Plaintiff that Defendant Johnson had told her that she was going to give Plaintiff a rules violation to "teach" him a lesson for filing the grievance on the mentor program in order to get Plaintiff fired. Ms. Rudd stated Johnson was very upset because Plaintiff was assisting some residents file complaints against Defendant Johnson and other Walden House staff.

On December 29, 2010, Plaintiff sent a letter to Doctor V. Eisen, Chief Executive Officer, Walden House, complaining about Defendants Johnson and Leflore. A copy of this letter was sent to Defendant's supervisor, Wayne Garcia, Defendant Hebron and Warden at SATF.

1  On February 19, 2011, Plaintiff served a CDCR-22 form on Defendant Leflore for not adjudicating Plaintiff's 602 inmate appeal on the mentor program as required by CDCR rules. Defendant Leflore snatched the form out of Plaintiff's hands and walked away stating, "I told you that you would regret this."

On March 10, 2011, Plaintiff was "confronted" by some of the mentors for pursuing the appeal on the mentor program and told to quit or stop filing grievances, writing Doctor Vitka, and helping residents with their grievances.

On March 18, 2011, Plaintiff went to facility Captain V. Ramirez's office and filed a complaint against Defendant Johnson and requested internal affairs investigate her inappropriate relationship with mentor S. Holland for smuggling contraband into the prison. Captain Ramirez indicated he would contact internal affairs.

On March 25, 2011, Plaintiff again went to Captain Ramirez's office and informed him of Defendant Johnson's knowledge of his "confidential complaint." Captain Ramirez indicated that he would look into it.

On May 29, 2011, Plaintiff was having a conversation with Defendant Leflore when Defendant Johnson walked up and started yelling at Plaintiff for failing to move a resident. Defendant Johnson stated, "Don't forget, you're just an inmate!" Johnson further stated, "I know your case, you're nothing but a mother-fucking drunk!" I immediately asked Defendant Leflore to address this outburst from Johnson as her immediate supervisor and Leflore just walked away. I told Defendant Johnson I was immediately filing a staff misconduct complaint against her and Johnson stated, "You're going to regret this and you're going to regret ratting on me."

On May 29, 2011, Plaintiff immediately filed a staff misconduct appeal against Defendant Johnson.

On April 1, 2011, Plaintiff received three separate laudatory memorandum from Walden House provider's Sue Rudd, Mona Velasquez and Doris Trapp who were troubled with the actions of Defendant Johnson. Sue Rudd was immediately fired and ordered off prison grounds when she told Defendants she was going to tell the truth about their retaliatory conduct towards Plaintiff. Mona Velasquez and Doris Trapp were admonished for authoring memorandums.

1     On April 3, 2011, Plaintiff was served a CDC-115 Rules Violation Report authored by
2 Defendant Johnson alleging "Behavior That Could Lead to Violence." This fraudulent disciplinary
3 report was logged as F-11-03-013 and was motivated by Plaintiff filing the staff misconduct appeal.
4     On April 8, 2011, Plaintiff was called before Senior Hearing Officer Lieutenant James who
5 found Plaintiff not guilty of the charges filed by Defendant Johnson. Correctional officer E. Guillen
6 testified that the allegations by Defendant Johnson were not true as officer Guillen witnessed the
7 interaction referenced in the CDC-115. Lieutenant James found the charges to be in retaliation for
8 Plaintiff filing the staff misconduct appeal.
9     Approximately two days later, Plaintiff was confronted by Defendant Johnson who stated,
10 "you got lucky on the 115 but I have something else planned for you."
11    On April 10, 2011, Plaintiff again contacted the facility captain to inquire as to when Plaintiff
12 would be interviewed by internal affairs and to inform the captain of the continued threats by
13 Defendants Johnson and Leflore.
14    On April 12, 2011, Plaintiff authored and forwarded a second letter to Doctor E. Eisen, Walden
15 House, regarding the actions of her employees.
16    On April 14, 2011, former Walden House provider, Sue Rudd, emailed Plaintiff's website
17 detailing retaliatory actions by Defendants Johnson and Leflore against Plaintiff for engaging in
18 protected conduct.
19    On April 16, 2011, Plaintiff was contacted on the yard by Lieutenant Alva who stated, "Did
20 you get your new chrono yet?" Plaintiff indicated that he did not know what Alva was talking about
21 and he stated, "Oh, you soon will."
22    On April 19, 2011, Plaintiff was paged to the program office and placed in a cage. Plaintiff
23 was informed by DeOchoa that he was being rehoused in administrative segregation pending
24 investigation into allegations Plaintiff made against Defendants Johnson, Leflore, and other Walden
25 House employees. DeOchoa approached Plaintiff and stated, "You probably shouldn't have filed the
26 grievances and 'ratted' on Stacey."
27    Also, on April 19, 2011, the administrative segregation sergeant approached the cage and
28 stated, "This is the guy that likes to file grievances?" Shortly thereafter, the sergeant brought a large

inmate out of a cell and placed him in the cage next to me.  Inmate Stroud told Plaintiff the Sergeant wanted him to come and talk to Plaintiff about being his cellie.  Inmate Stroud then stated, "They brought your Jewish food to the cell already, I'm Jewish too."  The sergeant came back and said, "Okay let's cell them up."  Both of them were cuffed-up and brought to a cell.  After the cell door was closed, inmate Stroud squeezed by Plaintiff to make sure he was the first to be uncuffed.  As soon as the handcuffs were removed from inmate Stroud, he instantaneously began striking Plaintiff in the face and torso area.  The escorting officer, Megallon, immediately began spraying o.c. pepper spray into the cell and covered Plaintiff's body with spray.  Plaintiff was still cuffed and was now being struck without the ability to see.  Once the assault ended, Plaintiff was pulled from the cell and escorted to a shower for decontamination.  Plaintiff was told, "This is what happens to those who like to tell on staff in ad-seg."  Plaintiff was suffering excruciating pain from the assault and from the o.c. pepper spray which covered his entire body including the groan area as Plaintiff was only wearing a pair of boxer shorts.  Plaintiff was escorted to a holding cell and the ad-seg sergeant approached and Plaintiff stated, "Nice set-up."  He responded, "prove it."  After being housed in a different cell, Plaintiff was informed by an officer that inmate Stroud was a level IV inmate (Plaintiff was a level II at the time), a validated Skinhead and member of the Security Threat Group II and that Plaintiff should never have been placed in the cell with Stroud under any circumstances.

On April 20, 2011, Plaintiff was interviewed by the facility F captain.  Plaintiff told the captain that he wanted an investigation done on the assault and battery suffered on April 19, 2011.  The captain stated, "good luck on that."

Approximately ten days later, Plaintiff was pulled from the ad-seg cell and interviewed by Investigative Services Lieutenant S. Ramirez.  During this interview, Plaintiff shared all of the information Plaintiff knew about Defendants Johnson, Leflore and other Walden House employees, also about the retaliation Plaintiff was experiencing for filing grievances by all Defendants.  Lieutenant Ramirez took a few notes but then began questioning Plaintiff regarding Plaintiff's daughter, Ashley.  Plaintiff asked the Lieutenant why he wanted to know about Plaintiff's daughter and the Lieutenant refused to answer.  Plaintiff was returned to the cell and discovered that all of Plaintiff's properly, including legal work, had been removed by investigative services.

On April 27, 2011, Plaintiff appeared before Classification and was retained in ad-seg. Plaintiff requested an investigation regarding the assault and battery suffered on April 19, 2011.

On May 10, 2011, Plaintiff was placed in a holding cell by investigative services where Plaintiff's property was in boxes. Plaintiff was given thirty minutes to decide what three boxes, out of six, Plaintiff was going to keep. Plaintiff discovered some of Plaintiff's legal work and property missing and damaged.

On May 20, 2011, an officer approached Plaintiff's cell and stated, "The reason you're still in ad-seg is because someone is trying to set you up and mailed in a letter detaining an escape plan and referring to a smuggled cell phone, along with photocopies of police badges." The officer then stated, "We think Stacey Johnson mailed it in."

Approximately two days later, Plaintiff received a letter from Plaintiff's wife, Michelle Perrotte, indicating that her, Plaintiff's daughter Ashley, and Plaintiff's father-in-law, Doctor Edward Lambert, had just been interviewed by Special Agent John Santos with the CDCR regarding an escape letter that had been addressed to Plaintiff and intercepted by the prison on April 27, 2011. The letter was purportedly signed by Plaintiff's daughter Ashley with a fake return address in Pasadena, California. CDCR believed that the letter was written to cause Plaintiff significant harm and the investigation did reveal or suggest a possible motive for the origination of the letter with the incident involving Stacey Johnson at the prison.

On June 15, 2011, Plaintiff appeared before classification and cleared to be returned to Facility F. Classification indicated they believed Plaintiff was being wrongly accused and did not deserve to be in ad-seg. Plaintiff inquired as to what was being done regarding the retaliation for exercising protected conduct and the committee chairperson indicated that information was confidential.

Plaintiff was escorted back to Facility F with the remainder of Plaintiff's property. Approximately four hours later, officers came to the unit where Plaintiff was housed, cuffed Plaintiff and rehoused Plaintiff in ad-seg without the property Plaintiff had in his cell just four hours earlier. Plaintiff was told by the officers that Defendant Johnson had placed a CDCR-128B informational chrono in Plaintiff's file falsely indicating that she did not feel safe with Plaintiff on the facility because, among other statements, "Plaintiff threatened her that Plaintiff was going to send articles

about her to newspapers." This CDCR-128B was dated April 13, 2011, just five days after Plaintiff had been found not guilty on the rules violation report issued by Defendant Johnson.

Approximately a week later, Plaintiff appeared before classification and told, "We believe this chrono is retaliation by Johnson and that it is safer for you to be away from her before she does something even worse to you. You will remain in ad-seg until you are transferred."

On August 5, 2011, Plaintiff filed an additional staff misconduct appeal on Defendant Johnson requesting an investigation into Johnson's retaliatory actions. The institution refused to process the appeal and after two attempts, Plaintiff sent the appeal to the Chief of Inmate Appeals in Sacramento, California, where it was again rejected. Plaintiff informed the Chief of Inmate Appeal of the investigation that Defendant Johnson mailed an escape letter to Plaintiff which caused Plaintiff significant injury, as well as filing the false disciplinary and the challenged CDCR-128B. Plaintiff's request for the appeal to be processed, as required by CDCR policies, was rejected.

On August 11, 2011, Plaintiff was transported to the California Men's Colony in San Luis Obispo, California. Upon arrival, a significant amount of Plaintiff's property was damaged and missing.

In April 2012, one of Plaintiff's Inmate Appeals on Defendant Johnson was granted at the Director's Level of review. This appeal required Defendant to remove reference to the CDC-115, Rules Violation Report, which was dismissed in the interest of justice from the fraudulent CDCR-128B authored by Defendant Johnson on April 13, 2011.

On July 10, 2012, Plaintiff received a letter, purportedly from Plaintiff's daughter, speaking of plans to destroy Plaintiff's chances at parole and other outrageous statements. The CDCR special agent that investigated the escape letter was contacted by Plaintiff's counselor and this letter was added to their investigative file. Agent Santos believed the letter was sent by the same source and was motivated by the recent Director's Level appeal grant.

On October 10, 2012, Plaintiff appeared before the parole board and the fraudulent (escape) letters and Defendant Johnson's false allegations were discussed at length.

On January 3, 2013, Plaintiff received another letter purportedly from Plaintiff's daughter with more outrageous content. This was forwarded to CDCR investigations.

12

On April 3, 2013, Plaintiff appeared before the parole board who required Plaintiff to address the escape letters sent by Defendant Johnson, as well as Defendant Johnson's false allegations in the CDCR-128B form April 13, 2011.

On August 28, 2013, Plaintiff's parole grant was reversed by Governor Brown due in part to the escape letters and false allegations by Defendant Johnson.

In October 2013, Plaintiff's attorney spoke with Special Agent John Santos regarding the escape letters used by Governor to reverse Plaintiff's parole grant and Santos stated, "I have determined the letters sent to Mr. Perrotte are fraudulent and intended to set Perrotte up to be denied parole at his upcoming hearings. Plaintiff continues to receive fraudulent letters from the same source.

On September 3, 2014, Plaintiff was required, again, to address the referenced letters and Defendant Johnson's fraudulent allegations on April 13, 2011, at Plaintiff's parole hearing.

At no time did Defendant Leflore and Hebron exercise their supervisory responsibility and prevent Defendant Johnson from continually retaliating against Plaintiff for exercising protected conduct, and, at times, participated directly in the retaliation.

**C.     Statement of Undisputed Facts**

1.     Between May 2008 and January 7, 2015 (the relevant period), Plaintiff Jeffrey Perrotte, was a prisoner within the custody of the California Department of Corrections and Rehabilitation (CDCR). (Compl., ECF No. 1.)

2.     Between May 2008 and August 11, 2011, Plaintiff was incarcerated at the California Substance Abuse Training Facility (SATF) in Corcoran, California. (Id. at 24.)

3.     From approximately 2000 through the end of 2010, Defendant Hebron was employed by CDCR as a correctional counselor III (CCIII) for the Drug Treatment Programs at SATF. (Hebron Decl ¶ 1, ECF No. 45-12.)

4.     In January 2011, Defendant Hebron transferred to a CCIII position overseeing operations in the Records Department at SATF before retiring in July of 2012. (Id. ¶¶ 2-3.)

5.     During the relevant period, Plaintiff submitted a total of sixteen CDCR Form 602 custody appeals accepted and adjudicated at the first and/or second level of review by the Office of Appeals at SATF. (Corral Decl. ¶¶ 8-9, Exs. 2-17, ECF Nos. 45-4, 45-5, 45-6.)

1     6.      Plaintiff submitted ten custody appeals from SATF that were accepted and adjudicated at the Third Level of Review.  (Voong Decl. ¶¶ 7-9, Ex. 11, ECF Nos. 45-9, 45-10; Corral Decl. ¶¶ 8-9, Ex. 16.)

### D.     Findings on Defendant's Motion

As an initial matter, there is no dispute that there was available administrative remedy system at CDCR by submitting a CDCR Form 602 "Inmate/Parolee Appeal, and Plaintiff was aware of the inmate appeals process.  Albino, 747 F.3d at 1172.

Defendants have submitted evidence, which is undisputed, that during the relevant period, Plaintiff submitted a total of sixteen CDCR Form 602 custody appeals accepted and adjudicated at the first and/or second level of review by the Office of Appeals at SATF.  (Corral Decl. ¶¶ 8-9, Exs. 2-17, ECF Nos. 45-4, 45-5, 45-6.)  Plaintiff submitted ten custody appeals from SATF that were accepted and adjudicated at the Third Level of Review.  (Voong Decl. ¶¶ 7-9, Ex. 11, ECF Nos.45-9, 45-10; Corral Decl. ¶¶ 8-9, Ex. 16.)  Only one of those custody appeals, log number SATF-Z-11-01857, including Plaintiff's allegations that Johnson retaliated against him.  (Id.)  In appeal log number SATF-Z-11-01857, Plaintiff alleged that Johnson retaliated by having him placed in Ad-Seg.  (Voong Decl. ¶ 9, Ex. 11; Corral Decl. ¶ 12, Ex. 16.)  Plaintiff also submitted five appeals that were screened-out and/or cancelled at the first level of review at SATF.  None of those screened-out appeals concerned Plaintiff's allegations of retaliation against Defendant Hebron.   (Corral Decl. ¶ 10, Ex. 18.)  Plaintiff did not submit any other custody appeals during the relevant period.  (Corral Decl. ¶ 13.)

Defendant Hebron argues that it is undisputed that Plaintiff exhausted administrative remedies for at least part of the retaliation claims against Defendant Johnson in his complaint.  However, appeal log number SATF-Z-11-01857, Plaintiff failed to name and/or identify Defendant Hebron as a participant and/or a witness to the alleged retaliation.  (Corral Decl., Ex. 16.)  Defendant argues that instead, at all three levels of appeal, Plaintiff alleged that Johnson, and only Johnson, retaliated against him over several months in 2011.  (Id.)

An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress," and "the prisoner need only provide the level of detail required by the prison's regulations."  Sapp v. Kimbrell, 623 F.3d at 824.  CDCR's regulations require a

14

description of "the specific issue under appeal and the relief requested," and a description of the staff members involved and their involvement.[4] § 3084.2(a).

Defendant Hebron submits that she transferred in January 2011 to a position overseeing the SATF Records Department. (Hebron Decl. ¶ 2, ECF No. 45-12.) After review of appeal log number SATF-Z-11-01857, the Court finds the appeal was insufficient to put prison officials on notice of any alleged claim of retaliation against Defendant Hebron. Indeed, in appeal log number SATF-Z-11-01857, Plaintiff stated the following:

> On 6-15-11, I was placed in A.S.U. due to retaliatory allegations made by Walden House Counselor S. Johnson. These absurd allegations were only made after I had filed an inmate appeal on the mentor program in October of 2010, authored a letter of complaint against S. Johnson to the C.E.O. of Walden House in December of 2010, made custody staff aware of several instances of staff misconduct by S. Johnson, filed a staff misconduct appeal against S. Johnson on 3-29-11 (which is now missing), successfully defended RVR-F-11-03-013 on 4-8-11, which S. Johnson was the reporting employee and in which none of the current baseless allegations found in the attached CDCR-128-G were made, and spoke to internal affairs. When I appeared before CDW (A) M. Tann on 6-15-11, he indicated this was a "non-disciplinary" ASU placement and that I would be transferred "non-adversely) and be "A1-A" upon transfer in opposition to the current CDCR-128-G. This "adverse" nature of transfer needs to be corrected prior to transfer. Under federal case law retaliation need only be inferred by a statement of facts. This instance is obvious.

(Corral Decl., Ex. 16.) As relief, Plaintiff requested the following:

> For the transfer to be reclassified as "non-adverse" and upon transfer be Med A "A/A," instead of "A2B" which is what CDW (A) M. Tann said it would be; for an investigation to be conducted to determine the validity of the allegations made by S. Johnson and found in the body of the attached CDCR-128G; for all documents, including those generated by S. Johnson be expunged from my C-File; for S. Johnson to be terminated and charged for making false retaliatory statements in response to the dismissal of RVR F-11-03-013.

(Id.)

///

///

///

---

[4] CDCR amended its relevant regulations as an emergency on December 13, 2010; the regulations became operative on January 28, 2011; and the Certificate of Compliance was transmitted to the Office of Administrative Law on June 15, 2011, and filed on July 28, 2011. Cal. Code Regs. tit. 15, § 3084.2, History. Thus, at the time of the events at issue in this action, the current regulations applied.

1          In granting in part Plaintiff's appeal at the third level of review, the Appeals Examiner stated

2   the following:

> The documentation and arguments are persuasive that the appellant has presented sufficient evidence or facts to warrant a modification of the [second level review].  The Third Level Review (TLR) notes that in section "F" of the appeal the appellant contends that the CDC Form 128-B, General Chrono, authored by S. Johnson, which remains in his central file was generated five days after the RVR was dismissed should be removed because it references the dismissed RVR in the first sentence.  Pursuant to California Code of Regulations, Title 15, Section (CCR) 3326(b), information developed through the disciplinary process, classification committee determinations affecting the inmate, or events requiring explanation shall be recorded by the disciplinary hearing officer on a CDC Form 128-B, Informative Chrono, and referred to the classification committee.  Such information shall include but not be limited to the following: (3) Any program assignment or placement change which needs to be considered in view of other inmate or employee animosity toward the individual.  The TLR notes that the CDC Form 128-B in question, was generated five days after the RVR was heard and makes reference to an RVR that had been dismissed, as such the CDC Form 128-B should be amended.
>
> The appellant is advised that CDC Operations Manual, Section 72010.7.2 governing CDC Form 128Bs is clear, staff "shall use the CDC Form 128-B to report such information as the inmate's relationships with fellow inmates, behavior, personal cleanliness, general attitude, and personality."  The TLR does find that the appellant has failed to provide any document to indicate the information contained after the first sentence of said CDC Form 128-B contains false information.  As such, the TLR finds that S. Johnson appropriately documented her observations of the appellant's behavior.  Nonetheless, based upon the contents noted within the CDC Form 128B as it is currently written, the TLR finds good cause to intervene.

(Corral Decl., Ex. 16.)

          Appeal log number SATF-11-01857, involved only misconduct by Johnson and the appeal responses addressed only the alleged misconduct by Johnson.  Thus, Defendant Hebron has met her burden of proof in demonstrating that Plaintiff failed to exhaust the administrative remedies as to the claim of retaliation against her.  "Under the PLRA, a grievance 'suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (quoting Sapp v. Kimbrell, 623 F.3d at 824).  Although the grievance need not include legal terminology or theories, it must alert the prison to the nature of the problem and facilitate its resolution.  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).   CDCR's regulations require a description of "the specific issue under appeal and the relief requested," and a description of the staff

members involved and their involvement.[5]  § 3084.2(a).

In this instance, Plaintiff's appeal does not sufficiently explain that Defendant Hebron was retaliating against him for submitting prison appeals, filing lawsuits against prison staff, writing an article critical of SATF programs and policies, and for assisting other inmates with their inmate appeals and/or lawsuits.  Nor is there any basis to support a reasonable inference from Plaintiff's grievance that any retaliatory action was taken by Defendant Hebron.[6]  Therefore, the Court finds that Defendant has met her burden of proof, and the burden now shifts to Plaintiff to demonstrate, by way of evidence, that something in his particular case made the existing administrative remedies effectively unavailable to him.  Albino, 747 F.3d at 1172.

In his instance, Plaintiff did not file an opposition and there is no evidence before the Court that something in this case made the existing administrative remedies effectively unavailable to Plaintiff.  The Ninth Circuit has held that there are exceptions to the general PLRA exhaustion requirement where the actions of prison staff render a prisoner's administrative remedies "effectively unavailable."  See Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (a Warden's rejection based upon mistaken reliance on a regulation "rendered [the prisoner's] administrative remedies effectively unavailable"); Sapp v. Kimbrell, 623 F.3d at 823 (prison officials can render "administrative remedies effectively unavailable by improperly screening a prisoner's grievances"); Albino v. Baca, 747 F.3d at 1177 (failure to inform a prisoner of the administrative appeals process following multiple requests for instruction rendered his administrative remedy effectively unavailable); McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison

---

[5] CDCR amended its relevant regulations as an emergency on December 13, 2010; the regulations became operative on January 28, 2011; and the Certificate of Compliance was transmitted to the Office of Administrative Law on June 15, 2011, and filed on July 28, 2011. Cal. Code Regs. tit. 15, § 3084.2, History.  Thus, at the time of the events at issue in this action, the current regulations applied.

[6] The Court notes for the record that the exception established by Reyes v. Smith, 810 F.3d at 657-658, does not apply in this instance.  In Reyes, the Ninth Circuit Court of Appeals found an exception to the exhaustion requirement where prison officials address and fully consider an appeal on the merits in lieu of enforcing a procedural bar. Id.  Thus, an inmate who fails to properly name or reasonably identify all defendants in his inmate appeal may exhaust administrative remedies if CDCR is on full notice of the alleged violation and the responsible staff can be identified based on their association. Id. at 659.  Here, however, Plaintiff did not put CDCR on notice of his retaliation claim against Defendant Hebron as his claim of retaliation was against Defendant Johnson only.  As explained, the appeal did not include any allegations or reasonable inference from such allegations that Defendant Hebron had any involvement in the alleged retaliation by Defendant Johnson.  Thus, the holding in Reyes is inapplicable in this instance.

grievance process effectively unavailable.") Specifically, there is no evidence that Plaintiff was unaware of the prison's administrative grievance procedure, or that any prison official erred in the interpretation of any regulation in deciding the administrative appeals. Furthermore, the undisputed facts demonstrate that Plaintiff's inmate appeals were handled properly, and there is no showing that fear of retaliation prevented Plaintiff from exhausting the administrative remedies against Defendant Hebron. Accordingly, Defendant Hebron's motion for summary judgment should be granted because Plaintiff failed to exhaust the administrative remedies as to the retaliation claim against her.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant Hebron's motion for summary judgment be granted and Defendant Hebron be dismissed from the action, without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**January 17, 2017**__

UNITED STATES MAGISTRATE JUDGE