**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY P. PERROTTE, | ) Case No.: 1:15-cv-00026-LJO-SAB (PC) |
| Plaintiff, | ) |
| | ) FINDINGS AND RECOMMENDATIONS |
| v. | ) REGARDING DEFENDANTS' MOTION FOR |
| | ) SUMMARY JUDGMENT |
| STACEY JOHNSON, et al., | ) |
| | ) [ECF No. 99] |
| Defendants. | ) |
| | ) |

Plaintiff Jeffrey P. Perrotte is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants Stacey Johnson and Jean LeFlores' motion for summary judgment based on Plaintiff's alleged failure to exhaust the administrative remedies, filed October 25, 2017.

///
///
///
///
///
///

# I.

## RELEVANT BACKGROUND

This action is proceeding against Defendants Stacey Johnson and Jean LeFlore's for retaliation in violation of the First Amendment and cruel and unusual punishment in violation of the Eighth Amendment.

On August 4, 2016, Defendant Hebron (who was represented by separate counsel) filed a motion for summary judgment for failure to exhaust the administrative remedies as to the claims against her. (ECF No. 45.) Plaintiff did not file an opposition to Defendant Hebron's motion, despite being granted an extension of time to do so. (ECF No. 53.)

On January 18, 2017, the undersigned issued Findings and Recommendations recommending that Defendant Hebron's motion for summary judgment be granted, and the retaliation claims against her be dismissed. (ECF No. 70.) The Findings and Recommendations were served on the parties and contained notice that objections were to be filed within thirty days. (Id.) Plaintiff did not file objections. On February 28, 2017, the Findings and Recommendations were adopted in full and the claims against Defendant Hebron were dismissed from the action, without prejudice. (ECF No. 77.)

As previously stated, on October 25, 2017, Defendants Johnson and LeFlore filed a motion for summary judgment for failure to exhaust the administrative remedies. (ECF Nos. 99, 100.)

Plaintiff filed an opposition on December 28, 2017, along with a statement of undisputed facts and objections to Defendants' evidence. (ECF Nos. 114, 115, 117.) Defendants filed a reply and objections on January 4, 2018.[1] (ECF Nos. 118, 119.)

# II.

## LEGAL STANDARD

### A.    Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such

---

[1] Defendants object to Plaintiff's opposition because the argument contained therein is not evidence. However, contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where the contentions are based on personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 n.11 (9th Cir. 1995) verification satisfied by statement under penalty of perjury that contents true and correct.). Since Plaintiff's opposition is verified, it constitutes evidence to the extent the contents are based on information for which he has personal knowledge. (ECF No. 117.)

administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

**B.      Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P.

56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, <u>Albino</u>, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," <u>id.</u> at 1172.  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  <u>Id.</u>  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  <u>Id.</u> at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  <u>Id.</u>

**III.**

**DISCUSSION**

**A.      Description of CDCR's Administrative Remedy Process**

Plaintiff is a former state prisoner who was at the time of filing the instant complaint in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  CDCR has an administrative remedy process for inmate grievances.  Cal. Code Regs. tit. 15, § 3084.1 (2014).  Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 85-86 (2006); <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 818 (9th Cir. 2010).  CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA).  Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event.  Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).

///

**B. Summary of Allegations Underlying Plaintiff's Constitutional Claims**

Plaintiff contends that Defendants engaged in retaliation for Plaintiff exercising his First Amendment rights to file grievances.

In May 2008, Plaintiff interviewed with Defendants Hebron, Leflore and Johnson for a mentor position with Walden House at California Substance Abuse and Treatment Facility (SATF). Plaintiff was questioned regarding the number of prison grievances and lawsuits he filed in the past against prison staff. He was informed that if selected as a mentor candidate at the Walden House, he would be expected to use different methods in resolving any grievances other than the standard 602 inmate grievance procedure.

In October 2008, Plaintiff was called to the Facility Program Office where he was interviewed by Defendants Hebron, Leflore and Johnson. Plaintiff was questioned again about his history of filing grievances and in assisting other inmates in accessing the courts. Plaintiff was asked about a recent inmate grievance he filed regarding placement in a janitorial vocational training program and if he would be willing to refrain from filing grievances if he were accepted into the mentor program.

In November 2008, Plaintiff was accepted into the Walden House Substance Abuse Treatment Program as a mentor candidate. During orientation, Plaintiff was taught the tools of a therapeutic community and the family values of Walden House. During the mentor meetings, it was stressed to Plaintiff that grievances were to be resolved using the tools of the Walden House.

In August 2009, Plaintiff was called to the supervising counselor's office and Defendants Hebron, Johnson and Leflore were furious and yelled at Plaintiff regarding an article that had been published on July 22, 2009, in numerous newspapers which was critical of the Warden and the policies at SATF. Defendants called Plaintiff a liar for not mentioning the article (which had been submitted prior to interviewing for the mentor program) that violated the "family values" of the Walden house. A couple hours later, Plaintiff was "grouped" by all the mentors for writing the article and violating Walden House "family values" and was placed on therapeutic contract with the mentors. Plaintiff had to apologize to Defendants, give seminars to core groups, give seminars to resident clusters on trust, prepare a presentation to the mentors on trust, clean showers, and restrain from any mentor activities

for thirty days.  Plaintiff was also removed from the band program and cluster responsibilities by his supervising mentor, Senior Mentor John Ray.

Plaintiff began receiving many complaints from residents regarding inappropriate conduct by Defendant Johnson during group sessions.  Plaintiff requested a meeting with Defendant Johnson to address the concerns.  The meeting took place in September 2009, in Johnson's office and Plaintiff was informed, "You represent Walden House, not the residents.  Your job is to put any complaints about me to rest, not stir the pot.  My expectation is that you will do your job.  Don't bring these complaints to me again."  Plaintiff contacted Defendant Leflore on the yard and told him about the complaints and Defendant Johnson's response to Plaintiff.  Defendant Leflore told Plaintiff that Johnson was correct and that our role as mentors was to protect Walden House from any scrutiny by the prison administration.

In September 2009, during the union of body and mind event, Plaintiff was confronted by Defendant Johnson in the presence of Senior Mentor John Ray.  Johnson was furious that Plaintiff had switched microphones prior to making announcements and prior to performing.  Defendant accused Plaintiff of being a racist and stormed away.

Plaintiff was informed by Senior Mentor Ray the following day that Defendant Johnson had discovered that Plaintiff was assisting some residents in filing complaints against her and wanted to get rid of Plaintiff.  Senior Mentor Ray also indicated that Defendants Johnson, Leflore and Hebron were afraid that Plaintiff was going to author an additional newspaper article that was critical of their behavior towards residents and critical of the drug program at the prison.  Senior Mentor Ray informed Plaintiff that assisting residents had to come to an end or he would not be able to protect Plaintiff from Defendants.

In February 2010, Plaintiff was threatened by Defendants Johnson and Leflore about assisting residents in filing grievances and petitions in the court.  Plaintiff was instructed to cease these activities immediately.

In March 2010, Plaintiff was informed by Walden House Provider, Sue Rudd, that Defendants Johnson and Leflore had asked her to lie regarding Plaintiff's work in the cluster to justify firing Plaintiff and removing him from the program.

In July 2010, Plaintiff was told by Senior Mentor G. Scott Holland that Defendant Johnson was "dead-set" on causing Plaintiff harm for helping residents file grievances against her. Holland bragged that he was having a relationship with Defendant Johnson.

In August 2010, Plaintiff requested a meeting with Defendants Johnson and Leflore. Plaintiff informed Defendants of the complaints by residents regarding Johnson's conduct and Leflore's unwillingness to address the behavior as Program Director. Plaintiff requested Defendant Hebron, as the Warden's liaison to Walden House, do something about it. Defendants began yelling and screaming at Plaintiff that he was just an inmate and would not dictate anything to them. Plaintiff was warned that if any grievances were filed by Plaintiff, they would take adverse actions against Plaintiff. Defendant Hebron stated, "You agreed not to file grievances if you were accepted into Walden House Mr. Perrotte. If you cannot abide by these rules, you will be sent back to B-Yard." It should be noted, White or Hispanic inmates who were sent back to B-Yard were assaulted by the inmates there for agreeing to inter-racial bunk. Defendants were aware of this and utilized this as a significant threat for residents.

In September 2010, Plaintiff received state certification as an alcohol and drug counselor and requested his pay be adjusted to be paid equivalent to other mentors who had received state certification. The request was denied.

On October 23, 2010, Plaintiff filed a CDCR-602 inmate appeal challenging the pay scale and mentor program. The appeal was assigned to Defendant Leflore who refused to answer the appeal. Plaintiff forwarded a request to prison administration to compel Defendant Leflore to answer the appeal which infuriated Defendant who contacted Plaintiff on the yard and threatened that "your days here are numbered."

On approximately November 1, 2010, Plaintiff was paged to an "emergency" mentor meeting. The mentors present indicated that Defendants Leflore and Johnson had requested they "group" Plaintiff regarding the latest grievance and for violating the concepts of "family value." Plaintiff was placed on contract again and ordered to perform additional tasks to make amends for filing the grievance.

On approximately November 3, 2010, Walden House provider, Sue Rudd, warned Plaintiff that Defendant Johnson had told her that she was going to give Plaintiff a rules violation to "teach" him a lesson for filing the grievance on the mentor program in order to get Plaintiff fired. Ms. Rudd stated Johnson was very upset because Plaintiff was assisting some residents file complaints against Defendant Johnson and other Walden House staff.

On December 29, 2010, Plaintiff sent a letter to Doctor V. Eisen, Chief Executive Officer, Walden House, complaining about Defendants Johnson and Leflore. A copy of this letter was sent to Defendant's supervisor, Wayne Garcia, Hebron and Warden at SATF.

On February 19, 2011, Plaintiff served a CDCR-22 form on Defendant Leflore for not adjudicating Plaintiff's 602 inmate appeal on the mentor program as required by CDCR rules. Defendant Leflore snatched the form out of Plaintiff's hands and walked away stating, "I told you that you would regret this."

On March 10, 2011, Plaintiff was "confronted" by some of the mentors for pursuing the appeal on the mentor program and told to quit or stop filing grievances, writing Doctor Vitka, and helping residents with their grievances.

On March 18, 2011, Plaintiff went to facility captain V. Ramirez's office and filed a complaint against Defendant Johnson and requested internal affairs investigate her inappropriate relationship with mentor S. Holland for smuggling contraband into the prison. Captain Ramirez indicated he would contact internal affairs.

On March 25, 2011, Plaintiff again went to captain Ramirez's office and informed him of Defendant Johnson's knowledge of his "confidential complaint." Captain Ramirez indicated that he would look into it.

On May 29, 2011, Plaintiff was having a conversation with Defendant Leflore when Defendant Johnson walked up and started yelling at Plaintiff for failing to move a resident. Defendant Johnson stated, "Don't forget, you're just an inmate!" Johnson further stated, "I know your case, you're nothing but a mother-fucking drunk!" I immediately asked Defendant Leflore to address this outburst from Johnson as her immediate supervisor and Leflore just walked away. I told Defendant Johnson I

was immediately filing a staff misconduct complaint against her and Johnson stated, "You're going to regret this and you're going to regret ratting on me."

On May 29, 2011, Plaintiff immediately filed a staff misconduct appeal against Defendant Johnson.

On April 1, 2011, Plaintiff received three separate laudatory memorandum from Walden House provider's Sue Rudd, Mona Velasquez and Doris Trapp who were troubled with the actions of Defendant Johnson. Sue Rudd was immediately fired and ordered off prison grounds when she told Defendants she was going to tell the truth about their retaliatory conduct towards Plaintiff. Mona Velasquez and Doris Trapp were admonished for authoring memorandums.

On April 3, 2011, Plaintiff was served a CDC-115 Rules Violation Report authored by Defendant Johnson alleging "Behavior That Could Lead to Violence." This fraudulent disciplinary report was logged as F-11-03-013 and was motivated by Plaintiff filing the staff misconduct appeal.

On April 8, 2011, Plaintiff was called before Senior Hearing Officer Lieutenant James who found Plaintiff not guilty of the charges filed by Defendant Johnson. Correctional officer E. Guillen testified that the allegations by Defendant Johnson were not true as officer Guillen witnessed the interaction referenced in the CDC-115. Lieutenant James found the charges to be in retaliation for Plaintiff filing the staff misconduct appeal.

Approximately two days later, Plaintiff was confronted by Defendant Johnson who stated, "you got lucky on the 115 but I have something else planned for you."

On April 10, 2011, Plaintiff again contacted the facility captain to inquire as to when Plaintiff would be interviewed by internal affairs and to inform the captain of the continued threats by Defendants Johnson and Leflore.

On April 12, 2011, Plaintiff authored and forwarded a second letter to Doctor E. Eisen, Walden House, regarding the actions of her employees.

On April 14, 2011, former Walden House provider, Sue Rudd, emailed Plaintiff's website detailing retaliatory actions by Defendants Johnson and Leflore against Plaintiff for engaging in protected conduct.

On April 16, 2011, Plaintiff was contacted on the yard by Lieutenant Alva who stated, "Did you get your new chrono yet?" Plaintiff indicated that he did not know what Alva was talking about and he stated, "Oh, you soon will."

On April 19, 2011, Plaintiff was paged to the program office and placed in a cage. Plaintiff was informed by DeOchoa that he was being rehoused in administrative segregation pending investigation into allegations Plaintiff made against Defendants Johnson, Leflore, and other Walden House employees. DeOchoa approached Plaintiff and stated, "You probably shouldn't have filed the grievances and 'ratted' on Stacey."

Also, on April 19, 2011, the administrative segregation sergeant approached the cage and stated, "This is the guy that likes to file grievances?" Shortly thereafter, the sergeant brought a large inmate out of a cell and placed him in the cage next to me. Inmate Stroud told Plaintiff the Sergeant wanted him to come and talk to Plaintiff about being his cellie. Inmate Stroud then stated, "They brought your Jewish food to the cell already, I'm Jewish too." The sergeant came back and said, "Okay let's cell them up." Both of them were cuffed-up and brought to a cell. After the cell door was closed, inmate Stroud squeezed by Plaintiff to make sure he was the first to be uncuffed. As soon as the handcuffs were removed from inmate Stroud, he instantaneously began striking Plaintiff in the face and torso area. The escorting officer, Megallon, immediately began spraying o.c. pepper spray into the cell and covered Plaintiff's body with spray. Plaintiff was still cuffed and was now being struck without the ability to see. Once the assault ended, Plaintiff was pulled from the cell and escorted to a shower for decontamination. Plaintiff was told, "This is what happens to those who like to tell on staff in ad-seg." Plaintiff was suffering excruciating pain from the assault and from the o.c. pepper spray which covered his entire body including the groan area as Plaintiff was only wearing a pair of boxer shorts. Plaintiff was escorted to a holding cell and the ad-seg sergeant approached and Plaintiff stated, "Nice set-up." He responded, "prove it." After being housed in a different cell, Plaintiff was informed by an officer that inmate Stroud was a level IV inmate (Plaintiff was a level II at the time), a validated Skinhead and member of the Security Threat Group II and that Plaintiff should never have been placed in the cell with Stroud under any circumstances.

On April 20, 2011, Plaintiff was interviewed by the facility F captain. Plaintiff told the captain that he wanted an investigation done on the assault and battery suffered on April 19, 2011. The captain stated, "good luck on that."

Approximately ten days later, Plaintiff was pulled from the ad-seg cell and interviewed by Investigative Services Lieutenant S. Ramirez. During this interview, Plaintiff shared all of the information Plaintiff knew about Defendants Johnson, Leflore and other Walden House employees, also about the retaliation Plaintiff was experiencing for filing grievances by all Defendants. Lieutenant Ramirez took a few notes but then began questioning Plaintiff regarding Plaintiff's daughter, Ashley. Plaintiff asked the Lieutenant why he wanted to know about Plaintiff's daughter and the Lieutenant refused to answer. Plaintiff was returned to the cell and discovered that all of Plaintiff's properly, including legal work, had been removed by investigative services.

On April 27, 2011, Plaintiff appeared before Classification and was retained in ad-seg. Plaintiff requested an investigation regarding the assault and battery suffered on April 19, 2011.

On May 10, 2011, Plaintiff was placed in a holding cell by investigative services where Plaintiff's property was in boxes. Plaintiff was given thirty minutes to decide what three boxes, out of six, Plaintiff was going to keep. Plaintiff discovered some of Plaintiff's legal work and property missing and damaged.

On May 20, 2011, an officer approached Plaintiff's cell and stated, "The reason you're still in ad-seg is because someone is trying to set you up and mailed in a letter detaining an escape plan and referring to a smuggled cell phone, along with photocopies of police badges." The officer then stated, "We think Stacey Johnson mailed it in."

Approximately two days later, Plaintiff received a letter from Plaintiff's wife, Michelle Perrotte, indicating that she, Plaintiff's daughter Ashley, and Plaintiff's father-in-law, Doctor Edward Lambert, had just been interviewed by Special Agent John Santos with the CDCR regarding an escape letter that had been addressed to Plaintiff and intercepted by the prison on April 27, 2011. The letter was purportedly signed by Plaintiff's daughter Ashley with a fake return address in Pasadena, California. CDCR believed that the letter was written to cause Plaintiff significant harm and the

investigation did reveal or suggest a possible motive for the origination of the letter with the incident involving Stacey Johnson at the prison.

On June 15, 2011, Plaintiff appeared before classification and was cleared to be returned to Facility F. Classification indicated they believed Plaintiff was being wrongly accused and did not deserve to be in ad-seg. Plaintiff inquired as to what was being done regarding the retaliation for exercising protected conduct and the committee chairperson indicated that information was confidential.

Plaintiff was escorted back to Facility F with the remainder of Plaintiff's property. Approximately four hours later, officers came to the unit where Plaintiff was housed, cuffed Plaintiff and rehoused Plaintiff in ad-seg without the property Plaintiff had in his cell just four hours earlier. Plaintiff was told by the officers that Defendant Johnson had placed a CDCR-128B informational chrono in Plaintiff's file falsely indicating that she did not feel safe with Plaintiff on the facility because, among other statements, "Plaintiff threatened her that Plaintiff was going to send articles about her to newspapers." This CDCR-128B was dated April 13, 2011, just five days after Plaintiff had been found not guilty on the rules violation report issued by Defendant Johnson.

Approximately a week later, Plaintiff appeared before classification and told, "We believe this chrono is retaliation by Johnson and that it is safer for you to be away from her before she does something even worse to you. You will remain in ad-seg until you are transferred.

On August 5, 2011, Plaintiff filed an additional staff misconduct appeal on Defendant Johnson requesting an investigation into Johnson's retaliatory actions. The institution refused to process the appeal and after two attempts, Plaintiff sent the appeal to the Chief of Inmate Appeals in Sacramento, California, where it was again rejected. Plaintiff informed the Chief of Inmate Appeal of the investigation that Defendant Johnson mailed an escape letter to Plaintiff which caused Plaintiff significant injury, as well as filing the false disciplinary and the challenged CDCR-128B. Plaintiff's request for the appeal to be processed, as required by CDCR policies, was rejected.

On August 11, 2011, Plaintiff was transported to the California Men's Colony in San Luis Obispo, California. Upon arrival, a significant amount of Plaintiff's property was damaged and missing.

In April 2012, one of Plaintiff's Inmate Appeals on Defendant Johnson was granted at the Director's Level of review. This appeal required Defendant to remove reference to the CDC-115, Rules Violation Report, which was dismissed in the interest of justice from the fraudulent CDCR-128B authored by Defendant Johnson on April 13, 2011.

On July 10, 2012, Plaintiff received a letter, purportedly from Plaintiff's daughter, speaking of plans to destroy Plaintiff's chances at parole and other outrageous statements. The CDCR special agent that investigated the escape letter was contacted by Plaintiff's counselor and this letter was added to their investigative file. Agent Santos believed the letter was sent by the same source and was motivated by the recent Director's Level appeal grant.

On October 10, 2012, Plaintiff appeared before the parole board and the fraudulent (escape) letters and Defendant Johnson's false allegations were discussed at length.

On January 3, 2013, Plaintiff received another letter purportedly from Plaintiff's daughter with more outrageous content. This was forwarded to CDCR investigations.

On April 3, 2013, Plaintiff appeared before the parole board who required Plaintiff to address the escape letters sent by Defendant Johnson, as well as Defendant Johnson's false allegations in the CDCR-128B form April 13, 2011.

On August 28, 2013, Plaintiff's parole grant was reversed by Governor Brown due in part to the escape letters and false allegations by Defendant Johnson.

In October 2013, Plaintiff's attorney spoke with Special Agent John Santos regarding the escape letters used by Governor to reverse Plaintiff's parole grant and Santos stated, "I have determined the letters sent to Mr. Perrotte are fraudulent and intended to set Perrotte up to be denied parole at his upcoming hearings. Plaintiff continues to receive fraudulent letters from the same source.

On September 3, 2014, Plaintiff was required, again, to address the referenced letters and Defendant Johnson's fraudulent allegations on April 13, 2011, at Plaintiff's parole hearing.

At no time did Defendant Leflore exercise their supervisory responsibility and prevent Defendant Johnson from continually retaliating against Plaintiff for exercising protected conduct, and, at times, participated directly in the retaliation.

///

**C. Statement of Undisputed Facts**

1.     Between May 2008 and January 7, 2015 (the "relevant period), Plaintiff was a prisoner within the custody of the California Department of Corrections and Rehabilitation ("CDCR"). (Compl., ECF No. 1.)

2.     Between May 2008 and August 11, 2011, Plaintiff was incarcerated at the California Substance Abuse and Treatment Facility ("SATF") in Corcoran, California.  (Id. at ¶¶ 16, 61.)

3.     Plaintiff alleges that Johnson was employed as a Supervising Counselor at Walden House at SATF.  (Id. at ¶ III(A).)

4.     Plaintiff alleges that LeFlore was employed as a Program Director at Walden House at SATF.  (Id. at ¶ III(B).)

5.     Plaintiff alleges that, during his incarceration at SATF, LeFlore and Johnson retaliated against Plaintiff for submitting prisoner appeals, filing lawsuits against prison staff, writing an article critical of SATF programs and policies, and for assisting other inmates with their inmate appeals and/or lawsuits.  (Id. at ¶ 2.)

6.     During the relevant period, Plaintiff submitted a total of sixteen CDCR Form 602 custody appeals accepted and adjudicated at the first and/or second level of review by the Office of Appeals at SATF.  (Corral Decl. ¶¶ 8-9, Exs. 2-17, ECF Nos. 45-4, 45-5, 45-6.)

7.     Plaintiff submitted ten custody appeals from SATF that were accepted and adjudicated at the Third Level of Review.  (Voong Decl. ¶¶ 7-9, ECF Nos. 45-7, 45-8 to 45-11.)

**D. Findings on Defendants' Motion**

Defendant LeFlore moves for summary judgment on the ground that Plaintiff failed to properly exhaust his administrative remedies against by failing to name or otherwise identify LeFlore in the administrative complaint against Defendant Johnson, in appeal log number SATF-Z-11-01857, that serves as the basis for Plaintiff's civil complaint.

Defendant Johnson moves for partial summary judgment because Plaintiff failed to properly exhaust his administrative remedies as to many of Plaintiff's allegations within his civil complaint by failing to articulate these allegations in the administrative complaint that named Defendant Johnson (appeal log number SATF-Z-11-01857).

14

Defendants argue that the factual findings from the Court's January 18, 2017, Findings and Recommendations establish the law of the case. The law-of-the-case doctrine provides that a court should not reexamine an issue previously decided in that case by the same court or a higher court. Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988). The previous order in the case must have "decided explicitly or by necessary implication' the issue that is in question. Milgard v. Tempering, Inc., v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990 (quoting Liberty Mutual Ins. Co. v. E.E.O.C., 691 F.2d 438, 441 (9th Cir. 1982).

Defendants are correct insofar as the factual and legal findings as to Defendant Hebron are the law of the case, and the factual and legal findings with respect to the grievances identified in the Court's January 18, 2017, Findings and Recommendations remain the law of the case. However, the findings are not the law of the case based on additional arguments and evidence presented as to Defendants Johnson and LeFlore.[2]

As an initial matter, there is no dispute that there was an available administrative remedy system at CDCR by submitting a CDCR Form 602 "Inmate/Parolee Appeal", and Plaintiff was aware of the inmate appeals process. Albino, 747 F.3d at 1172.

Defendants have submitted evidence that during the relevant period, Plaintiff submitted a total of sixteen CDCR Form 602 custody appeals accepted and adjudicated at the first and/or second level of review by the Office of Appeals at SATF. (Corral Decl. ¶¶ 8-9, Exs. 2-17, ECF Nos. 45-4, 45-5, 45-6.) Plaintiff submitted ten custody appeals from SATF that were accepted and adjudicated at the Third Level of Review. (Voong Decl. ¶¶ 7-9, Ex. 11, ECF Nos.45-9, 45-10; Corral Decl. ¶¶ 8-9, Ex. 16.) Only one of those custody appeals, log number SATF-Z-11-01857, included Plaintiff's allegations that Johnson retaliated against him. (Id.) In appeal log number SATF-Z-11-01857, Plaintiff alleged that Johnson retaliated by having him placed in Ad-Seg. (Voong Decl. ¶ 9, Ex. 11; Corral Decl. ¶ 12, Ex. 16.) Plaintiff also submitted five appeals that were screened-out and/or

---

[2] In any event, even if the Court's findings are not binding, for the reasons explained below, the evidence conclusively establishes that Plaintiff failed to exhaust his claims against Defendant LeFlore.

15

cancelled at the first level of review at SATF. None of the screened-out appeals concerned Plaintiff's

allegations of retaliation against Defendant LeFlore.   (Corral Decl. ¶ 10, Ex. 18; ECF No. 45-6.)

An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem

for which the prisoner seeks redress," and "the prisoner need only provide the level of detail required

by the prison's regulations." Sapp v. Kimbrell, 623 F.3d at 824.  CDCR's regulations require a

description of "the specific issue under appeal and the relief requested," and a description of the staff

members involved and their involvement.[3]  § 3084.2(a).  "Under the PLRA, a grievance 'suffices if it

alerts the prison to the nature of the wrong for which redress is sought.'"  Reyes v. Smith, 810 F.3d

654, 659 (9th Cir. 2016) (quoting Sapp v. Kimbrell, 623 F.3d at 824).  Although the grievance need

not include legal terminology or theories, it must alert the prison to the nature of the problem and

facilitate its resolution.  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

In appeal log number SATF-Z-11-01857, Plaintiff stated the following:

> On 6-15-11, I was placed in A.S.U. due to retaliatory allegations made by Walden House
> Counselor S. Johnson.  These absurd allegations were only made after I had filed an inmate
> appeal on the mentor program in October of 2010, authored a letter of complaint against S.
> Johnson to the C.E.O. of Walden House in December of 2010, made custody staff aware of
> several instances of staff misconduct by S. Johnson, filed a staff misconduct appeal against S.
> Johnson on 3-29-11 (which is now missing), successfully defended RVR-F-11-03-013 on 4-8-
> 11, which S. Johnson was the reporting employee and in which none of the current baseless
> allegations found in the attached CDCR-128-G were made, and spoke to internal affairs.
> When I appeared before CDW (A) M. Tann on 6-15-11, he indicated this was a "non-
> disciplinary" ASU placement and that I would be transferred "non-adversely) and be "A1-A"
> upon transfer in opposition to the current CDCR-128-G.  This "adverse" nature of transfer
> needs to be corrected prior to transfer.  Under federal case law retaliation need only be inferred
> by a statement of facts.  This instance is obvious.

(Corral Decl., Ex. 16.)  As relief, Plaintiff requested the following:

> For the transfer to be reclassified as "non-adverse" and upon transfer be Med A "A/A," instead
> of "A2B" which is what CDW (A) M. Tann said it would be; for an investigation to be
> conducted to determine the validity of the allegations made by S. Johnson and found in the
> body of the attached CDCR-128G; for all documents, including those generated by S. Johnson

---

[3] CDCR amended its relevant regulations as an emergency on December 13, 2010; the regulations became operative on January 28, 2011; and the Certificate of Compliance was transmitted to the Office of Administrative Law on June 15, 2011, and filed on July 28, 2011. Cal. Code Regs. tit. 15, § 3084.2, History.  Thus, at the time of the events at issue in this action, the current regulations applied.

be expunged from my C-File; for S. Johnson to be terminated and charged for making false retaliatory statements in response to the dismissal of RVR F-11-03-013.

(Id.)

In granting in part Plaintiff's appeal at the third level of review, the Appeals Examiner stated the following:

> The documentation and arguments are persuasive that the appellant has presented sufficient evidence or facts to warrant a modification of the [second level review]. The Third Level Review (TLR) notes that in section "F" of the appeal the appellant contends that the CDC Form 128-B, General Chrono, authored by S. Johnson, which remains in his central file was generated five days after the RVR was dismissed should be removed because it references the dismissed RVR in the first sentence. Pursuant to California Code of Regulations, Title 15, Section (CCR) 3326(b), information developed through the disciplinary process, classification committee determinations affecting the inmate, or events requiring explanation shall be recorded by the disciplinary hearing officer on a CDC Form 128-B, Informative Chrono, and referred to the classification committee. Such information shall include but not be limited to the following: (3) Any program assignment or placement change which needs to be considered in view of other inmate or employee animosity toward the individual. The TLR notes that the CDC Form 128-B in question, was generated five days after the RVR was heard and makes reference to an RVR that had been dismissed, as such the CDC Form 128-B should be amended.
>
> The appellant is advised that CDC Operations Manual, Section 72010.7.2 governing CDC Form 128Bs is clear, staff "shall use the CDC Form 128-B to report such information as the inmate's relationships with fellow inmates, behavior, personal cleanliness, general attitude, and personality." The TLR does find that the appellant has failed to provide any document to indicate the information contained after the first sentence of said CDC Form 128-B contains false information. As such, the TLR finds that S. Johnson appropriately documented her observations of the appellant's behavior. Nonetheless, based upon the contents noted within the CDC Form 128B as it is currently written, the TLR finds good cause to intervene.

(Corral Decl., Ex. 16, ECF No. 45-6.)

Appeal log number SATF-11-01857, involved only misconduct by Johnson and the appeal responses addressed only the alleged misconduct by Johnson. In his opposition, Plaintiff points to the fact that in August 2011, he attempted to submit an appeal in response to the First Level Response which stated, in part, "It is noted you are also requesting an investigation to be conducted to determine the validity of the allegations made by S. Johnson and for all documents including those generated by S. Johnson to be expunged from your C-file. Further you are requesting for S. Johnson to be terminated and charged for making false retaliatory statements. As I do not have the authority to grant

17

the action requested, I am unable to resolve these issues. Per the Appeals Office, you need to re-submit a separate CDCR-602 so that it can be forwarded to the appropriate staff member." (Opp'n, Ex. K, ECF No. 117.) However, the appeal was screened-out as duplicative. (Opp'n, Exs. L.) As explained above, Plaintiff's appeal was subsequently granted in part at the third level of review on March 14, 2012, Plaintiff's central file was reviewed, the contested-documentation was removed from his central, and Plaintiff received the relief he requested. Thus, the fact that Plaintiff attempted to file a grievance regarding the removal of the false documentation which was screened-out as duplicative is immaterial. It is clear Plaintiff received the relief he requested in this appeal and the claim of retaliation is deemed exhausted for placement in administrative segregation based on false information in retaliation for exercising his first amendment right to free speech.[4]

Plaintiff argument that, by generally naming Walden House in supporting documentation, he has named LeFlore, is without merit. (PSUF, ECF No. 115, at p. 5:23-6-3; Opp'n, Ex. O.) The evidence cited as naming Walden House clearly relates to the grievance against Defendant Johnson only, and could not be viewed by an appeals coordinator as a "reasonable attempt to identify" LeFlore as part of appeal log number SATF-Z-11-01857. (Id.; Cal. Code Regs. tit. 15, § 3084.2(a)(3).) Thus, Defendant LeFlore has met her burden of proof in demonstrating that Plaintiff failed to exhaust the administrative remedies as to the claim of retaliation against her.

Thus, based on a review of appeal log number SATF-Z-11-01857 Plaintiff alleged only two instances of retaliation by Defendant Johnson: (1) On April 14, 2011, Johnson filed a "General Chrono – SAP" [also known as CDCR Form 128-B] which alleged misstated, in part, that [o]n March 29, 2011 Inmate Perrotte was given a CDC 115 for 'behavior that could lead to violence,'" and (2) on June 15, 2011, Perrotte was "placed in A.S.U. due to retaliatory allegations made by Walden House counselor S. Johnson." (Appeal Log No. SATF-Z-11-01857; Corral Decl., Ex. 16, ECF 45-6, p. 40 of 74.)

In appeal log number SATF-Z-11-01364 (erroneously cited on the document's first page as 0136**3**), Plaintiff alleged that he was subjected to an assault by another inmate which forms the basis

---

[4] Ultimately, the Office of Appeals reclassified Plaintiff's transfer as "non-adverse" and ordered that Defendant Johnson amend the challenged CDCR Form 128-B by removing the alleged misstatement. (Appeal Log No. SATF-Z-11-01857; Ex. 16 to Corral Decl., ECF No. 45-6, p. 30 of 74.) Defendant Johnson modified the CDCR Form 128-B on April 23, 2011. (Appeal Log No. SATF-Z-11-01857; Ex. 16 to Corral Decl., ECF No. 45-6, pp. 49-50 of 74.)

of his cruel and unusual punishment claim and a part of his retaliation claims against Defendants Johnson and LeFlore.  (Appeal log number SATF-Z-11-01364, Corral Decl., Ex. 13, ECF No. 45-5; Screen-out letters, Ex. 18 to Corral Decl., ECF No. 45-6.)  The appeal was screened out because it was missing necessary supporting documents.  (Corral Decl., Ex. 18, ECF No. 45-6.)  In any event, this appeal does not contain any allegation that the assault was the result of retaliation.  (Corral Decl., Ex. 13, ECF No. 45-5.)  Furthermore, the appeal does not name Defendant Johnson or LeFlore.  (Id.) Moreover, because the appeal was "screened out" at the second of review for missing documentation pursuant to Title 15 of the California Code of Regulations section 3084.3, it could not serve to exhaust any claims stated therein.  Cal. Code Regs. tit. 15, § 3084.1(b) ("a cancellation or rejection decision does not exhaust administrative remedies").

In appeal log number SATF-F-11-01561, Plaintiff complained that some of his personal property was misplaced "by negligence on the part of staff at the California Men's Colony" while he was in administrative segregation on April 19, 2011.  (Appeal log number SATF-F-11-01561, Corral Decl., Ex. 14, ECF No. 45-6.)  In his complaint, Plaintiff contends that his personal property was log or damaged possibly in retaliation by Defendants Johnson and LeFlore.  (Compl. at ¶¶ 54, 58, 61, ECF No. 1.)  This appeal was denied at the third and final level of review on December 13, 2011.  (Corral Decl. Ex. 14, ECF No. 45-6.)  Although this appeal was procedurally exhausted, it does not contain any allegation that the alleged loss of or damage to Plaintiff's personal property was the result of retaliation.  (Id.)  Nor does appeal log number SATF-F-11-01561 mention Defendant Johnson or Defendant LeFlore.  (Id.)  Accordingly, this appeal does not serve to exhaust any of Plaintiff's retaliation claims against Defendants Johnson or LeFlore.

With regard to Defendant LeFlore, Plaintiff points to documentation that he contends exhausted the administrative remedies as to the retaliation claims against Defendant LeFlore, i.e. Exhibits G, G-1, G-2, I, and V.  (Opp'n at 25; ECF No. 117.)  However, the documentation does not support Plaintiff's argument.  Exhibit G attached to Plaintiff's opposition is a grievance that identifies LeFlore as to an unrelated claim by Plaintiff regarding a pay dispute.  (Opp'n at 25, Exs, G, G-1, G-2.) There are no allegations relating to retaliatory conduct by Defendant LeFlore.  (Id.)  Exhibit I is appeal log number SATF-Z-11-01364 (erroneously cited on the document's first page as 01363), which as

explained above, did not serve to exhaust any claims in this action.  (Opp'n, Ex. I.)  Exhibit V deals with Plaintiff's request to receive favorable chronos for completion of work and program completions, including Denial Management; Dialectical Behavioral Therapy; C-Facilitation of Thinking for a Change, and Co-Facilitation of Beat the Streets.  (Opp'n, Ex. V.)  The appeal was granted at the first level of review and he received favorable chronos for work completed as a Walden House Peer Mentor and the above-mention programs.  (Id.)

In opposition, Plaintiff further contends that the administrative remedies were effectively unavailable to him because he was subjected to retaliation and certain appeals were improperly screened. (Opp'n at pp. 6-8, 10-11, 16-22; ECF No. 117.)   "An inmate is required to exhaust only available remedies."  Albino, 747 F.3d at 1171 (citing Booth v. Churner, 532 U.S. 731, 736 (2001)).  "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'"  Albino, 747 F.3d at 1171 (quoting Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005)).  In Ross v. Blake, the Court set forth the following three examples of when the administrative remedies are not available: (1) the "administrative procedure … operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme … [is] so opaque that it becomes, practically speaking, incapable of use … so that no ordinary prisoner can make sense of what it demands; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S.Ct. 1850, 1859-60 (2016) (citations omitted).   In addition, when an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable.  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-1226 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

While threats and fear of retaliation may be sufficient to render the inmate grievance procedure unavailable, the Ninth Circuit has adopted a two-part test containing both a subjective and objective component stating:

To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance. If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable. That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.

McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015).

In support of his argument that he was deterred from lodging a grievance or pursuing an appeal due to a threat of retaliation, Plaintiff contends that he was subjected to threats by Defendants and his "fear of being hurt was real" and "Defendants conspired to have [him] beaten … and [this] 'chilled' [him] from filing staff misconduct appeals."). (Opp'n at p. 21, ECF No. 117.) Plaintiff has failed to submit evidence to support a finding that he "actually believed prison officials would retaliate against him if he filed [or attempted to exhaust] a grievance." McBride, 807 F.3d at 987. In addition, Plaintiff's allegations are belied by the evidence in the record. First, Plaintiff filed nine grievances after the alleged threats by Hebron and LeFlore in August 2009, and he filed five grievances after the April 2011 attack, including appeal log number SATF-Z-11-01857 alleging retaliation by Defendant Johnson. (Corral Decl., Exs. 9-17, ECF Nos. 45-5, 45-6.) Second, notwithstanding Defendants' hearsay objection, the declaration of John Ray submitted by Plaintiff, demonstrates that Plaintiff "refused to stop helping others file grievances against Warden House." (Opp'n, Ex. Q, p. 108 of 139, ¶ 8.) Thus, this declaration supports the finding that Plaintiff had no fear of retaliation. (Id.) Third, a Committee Action Summary dated June 15, 2011, evidences that Plaintiff was comfortable with Walden House staff following the April 2011 assault. (Opp'n, Ex. O, p. 102 of 139.) Fourth, it is undisputed that during the time in question, Plaintiff submitted no less than 26 grievances to the first, second, or third level of appeal. (Corral Decl. ¶¶ 8-9, Exs. 2-17, ECF Nos. 45-4, 45-5, 45-6; Voong Decl. ¶¶ 7-9, ECF Nos. 45-7, 45-8 to 45-11.) Furthermore, Plaintiff was clearly not deterred form filing appeal log number SATF-Z-11-01857 in which he alleged retaliatory conduct by Defendant Johnson. Lastly, Plaintiff offers no evidence that he subjectively believed officials would retaliate against him for filing appeals, and the evidence belies such claim. McBride, 807 F.3d at 987.

With regard to Plaintiff's claim that certain appeals were improperly screened, Plaintiff also fails to meet his burden to establish a triable issue of fact. Plaintiff fails to submit any evidence to support his finding that an inmate grievance relevant to his claims in this action was improperly screened out.[5] To the extent Plaintiff contends that an appeal regarding his claim that Defendant Johnson sent him letters detailing escape plans in an effort to get in trouble was either lost, stolen or destroyed, is not supported by an evidence. (Opp'n, Exs. S and T, ECF No. 117, pp. 111-124 of 139.) Furthermore, Plaintiff's argument is contradicted to the extent he argues he chose not to file an appeal regarding the "escape letters" because he did not have access to the relevant evidence. Plaintiff does not demonstrate how access to "complete information" prevented him from filing a grievance. Indeed, under the applicable regulations, an inmate must simply "state all facts known and available to him/her regarding the issue being appealed at the time of submitted the Inmate/Parolee Appeal form." Cal. Code Regs. tit. 15, § 3084.2(a)(4). Finally, Plaintiff's argument that he filed a grievance challenging the handling and/or processing of inmate appeals, does not evidence the improper screening of appeals. Plaintiff submits a letter dated August 25, 2009, which was submitted to the Appeals Coordinator in relation to appeal log number SATF-09-03297. (Opp'n, Ex. D, ECF No. 117, p. 46 of 139.) On September 17, 2009, the Chief of Inmate Appeals Branch responded to the letter by advising the SATF Appeals Coordinator to "[p]lease ensure that the rejection is appropriate and provide an explanation to the Inmate." (Opp'n, Ex. D-7, ECF No. 117, p. 48 of 139.) The appeal was subsequently reinstated and, on November 5, 2009, the appeal was granted. (Ex. 10 to Hebron MSJ, ECF No. 45-5, pp. 71-72 of 102.) Thus, any error in the processing of his appeal was corrected and Plaintiff admitted such in his first opposition filed on September 22, 2017. (ECF No. 95, p. 17:19-28.)

Lastly, Plaintiff argues that the Court should vacate the prior ruling on Defendant Hebron's motion for summary judgment. To the extent Plaintiff seeks reconsideration, it must be denied because there is an insufficient showing why he did not file an opposition and present such arguments in response to Defendant Hebron's motion. Nonetheless, the evidence Plaintiff submits does not demonstrate that Plaintiff exhausted or was prevented from exhausting his retaliation claims as to

---

[5] Plaintiff's claim that an appeal regarding Defendant Johnson's retaliatory actions was improperly screened-out is addressed above. (Opp'n, Ex. L.)

Defendant Hebron. Accordingly, there is no basis to reconsider the prior ruling and order dismissing the claim against Defendant Hebron.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment be granted;

2.  This action shall proceed on Plaintiff's retaliation claim against Defendant Johnson for placement of a false CDCR Form 128-B in his central file and placement in the A.S.U.; and

3.  All other claims against Defendant Johnson and Defendant LeFlore be dismissed from the action, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **July 10, 2018**

UNITED STATES MAGISTRATE JUDGE