# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY P. PERROTTE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>STACEY JOHNSON, et al.,<br><br>　　　　Defendants. | Case No. 1:15-cv-00026-LJO-SAB (PC)<br><br>ORDER REGARDING PLAINTIFF'S MOTION TO QUASH SUBPOENAS, REQUEST FOR PROTECTIVE ORDER, MOTION TO INVOKE FIFTH AMENDMENT PRIVILEGE, AND MOTION FOR SANCTIONS<br><br>[ECF Nos. 128, 131, 132, 148] |

Plaintiff Jeffrey P. Perrotte is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's motion to quash subpoenas and request for a protective order, and motion to compel, filed on March 30, 2018, respectively.  Defendant filed an opposition on April 20, 2018, and Plaintiff filed a reply on May 16, 2018.  (ECF No. 133, 147.)

**I.**

**RELEVANT PROCEDURAL HISTORY**

This case has a rather lengthy procedural history given the length of time for service of process and challenges thereto and the numerous filing by Plaintiff in this action.  Plaintiff filed the action on January 7, 2015.  On April 13, 2015, the Court screened Plaintiff's complaint and found that Plaintiff stated a cognizable retaliation claim against Defendants Cindy Hebron, Stacey Johnson, and Jean LeFlore, and a cognizable claim for cruel and unusual punishment against Defendants Johnson and

1

LeFlore. (ECF No. 8.) Plaintiff was granted the opportunity to file an amended complaint or notify the Court of his intent to proceed on the claims found to be cognizable. (Id.) On April 20, 2015, Plaintiff notified the Court of his intent to proceed solely on the claims found to be cognizable. (ECF No. 9.)

On May 4, 2016, Defendant Hebron filed an answer to the complaint.[1] (ECF No. 32.) On May 6, 2016, the Court issued the discovery and scheduling order. (ECF No. 33.)

On August 4, 2016, Defendant Hebron filed a motion for summary judgment for failure to exhaust the administrative remedies. (ECF No. 45.)

On January 18, 2017, the undersigned issued Findings and Recommendations recommending that Defendant Hebron's motion for summary judgment for Plaintiff's failure to exhaust the administrative remedies be granted, and the claims against Hebron be dismissed, without prejudice. (ECF No. 70.) On February 28, 2017, the Findings and Recommendations were adopted in full and the claim against Defendant Hebron was dismissed, without prejudice. (ECF No. 77.)

On February 6, 2017, Defendants LeFlore and Johnson filed an answer to the complaint. (ECF Nos. 73, 74.) On February 7, 2017, the Court issued the discovery and scheduling order. (ECF No. 76.)

On October 12, 2017, Defendants LeFlore and Johnson filed a motion for summary judgment for failure to exhaust the administrative remedies. (ECF No. 99.) Plaintiff filed an opposition on December 28, 2017, and Defendants filed a reply on January 4, 2018. (ECF Nos. 114, 115, 117, 118, 119.)

As previously stated on March 30, 2018, Plaintiff filed a motion to quash subpoenas and request for a protective order. (ECF No. 128.) On this same date, Plaintiff also filed a motion to compel discovery. (ECF No. 129.)

On April 20, 2018, Plaintiff filed a request for issuance of subpoenas, motion for sanctions, and motion to invoke his privilege under the Fifth Amendment. (ECF Nos. 130, 131, 132.)

On May 4, 2018, Plaintiff filed a second request for issuance of subpoenas. (ECF No. 141.)

---

[1] Defendant Hebron appeared by Deputy Attorney General, Justin Walker.

On May 21, 2018, Plaintiff filed a second motion for protective order and third request issuance of subpoenas. (ECF No. 148.) Defendant filed an opposition on June 8, 2018. (ECF No. 149.)

On July 10, 2018, the undersigned issued Findings and Recommendations recommending that Defendants' exhaustion-related motion for summary judgment be granted and this action proceed only on Plaintiff's retaliation claim against Defendant Johnson for placement of a false CDCR Form 129-B in his central file and placement in the A.S.U., and all other claims and Defendants be dismissed, without prejudice. (ECF No. 157.) The Findings and Recommendations were adopted in full on September 24, 2018. (ECF No. 161.) <u>Accordingly, this action is proceeding against Defendant Johnson only, and merits-based discovery is limited to the retaliation claim against her</u>.

On October 15, 2018, Plaintiff filed supplemental objections and a motion to alter the judgment. (ECF No. 167.) Defendant filed an opposition on November 5, 2018. (ECF No. 168.)

On November 27, 2018, Plaintiff's supplemental objections were overruled and his motion to alter the judgment was denied. (ECF No. 169.)

## II.

## DISCUSSION

### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond [certain] geographical limits …; (iii) requires disclosure of privileged or often protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Further a court may quash or modify a subpoena requiring the disclosures of a trade secret or other confidential commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i).

While irrelevance is not within the list of reasons enumerated to quash a subpoena, it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34. Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center, 211 F.R.D. 648, 662 (D. Kan. 2003) (quoting advisory committee notes to 1970 amendment (nothing that "the scope of discovery through a subpoena is the same as that application to Rule 34 and the other discovery rules"). Accordingly, the Court measure the discovery sought against the requirements of Rule 26(b)(1). Defendant bears the burden of demonstrating that the discovery it seeks is both relevant to the claims or defenses in the action and proportional to the needs of the case.

**B.  Motion to Quash**

1.  Background

Defendant submits that Plaintiff is seeking compensatory damages for lost wages because Defendant Johnson caused him to be incarcerated for three years longer than he should have been, and he claims entitlement to lost wages equal to his actual earnings post-release. (Compl. at ¶¶ 84, 89, ECF No. 1; MTQ, ECF No. 128 at 14:5-11.)

On August 28, 2013, Governor Edmund G. Brown, Jr. reversed the parole board's prior grant of parole to Plaintiff. (Declaration of Joel A. Morgan ("Morgan Decl."), ECF No. 134 at ¶ 2, Ex. 1 (August 28, 2013 Revocation of Parole by Governor Edmund G. Brown, Jr.).) As a result, Plaintiff remained incarcerated until February 10, 2015. (MTQ, ECF No. 128 at 7:18-18.) Plaintiff contends that Defendant Johnson is responsible for his additional information. (Compl. at ¶¶ 84, 89, ECF No. 1; MTQ, ECF No. 128 at 14:5-11.)

At issue are three document production subpoenas Defendant issued to Plaintiff's post-release employers seeking compensation information.

Defendant submits that after Plaintiff was paroled, he was employed by a nonprofit organization called Alternatives to Violence and a company called International Services, Inc. ("ISI"). (MTQ, ECF No. 128 at 9:21; 11:16-18; 18:13-15.) Plaintiff has informally produced W2's, but has objected to Defendant's interrogatories and requests for production that seek information regarding Plaintiff's employment, including compensation and work-related travel. (Morgan Decl., ¶ 3, Ex. 2; Responses to Written Discovery.) Defendant served the following three subpoenas: (1) ISI, dated

4

March 7, 2018, seeking "All documents, files, and records regarding your employment of, and compensation to, Jeffrey Perrotte (DOB 7/30/63) from 2015-2017, including, but not limited to, employment and termination agreements, commission/bonus statements, tax forms, travel reimbursements, and records of any business travel for ISI;[2] (2) International Development Services Inc. ("IDS"), dated January 25, 2018, seeking "All documents, files, and records regarding your employment of, and compensation of, Jeffrey Perrotte (DOB 7/30/63) from 2015-2017, including, but not limited to, employment and termination agreements, commission/bonus statements, tax forms, travel reimbursements, and records of any business travel for IDS, Inc.;[3] and (3) Alternative to Violence ("ATV"), dated march 6, 2018, seeking "All documents, files and records regarding your employment of, and compensation of, Jeffrey Perrotte (DOB 7/30/63) from 2015-2017, including, but not limited to, employment/termination agreements, commission/bonus/gift/income/travel reimbursement statements, pay stubs, tax forms, and any records related to any business or training travel for ATV, or any parent/subsidiary company of AVP, including, but not limited to, travel receipts submitted to you by Mr. Perrotte and itineraries/arrangements for Mr. Perrotte's travel. (MTQ, ECF No. 128, Exs. A, B. E.)

Defendant argues that one purpose of the subpoenas is to ascertain if Plaintiff's post-release employment was lawfully undertaken. On December 11, 2016, Plaintiff was reincarcerated for violating his parole. (Morgan Decl., Ex. 3 at 3:9-22; 81:8-22, ECF No. 134.) In relevant part, Plaintiff was found to have violated his parole by being more than 50 miles from his residence without authorization from his parole officer. (Id. at 3:9-13.) Plaintiff admitted to traveling to Los Angeles International Airport to board a flight to Nebraska for "business appointments in Nebraska for Monday through Friday." (Id. at 22:20-21.) Plaintiff did not have written permission from his parole officer to

---

[2] Defendant indicates that counsel for ISI contact him to seek an extension for the production deadline, which was granted. (Morgan Decl. ¶ 5.) After Plaintiff filed his motion to quash, counsel for Defendant requested that counsel for ISI not produce documents until after this Court resolves Plaintiff's motion to quash. (Morgan Decl. ¶ 5.)

[3] Defendant issued an earlier subpoena dated January 25, 2018 to IDS, which is related to ISI. After receiving a certificate of no records from IDS (which was received prior to Plaintiff filing his motion to quash), Defendant issued a similar subpoena to ISI. Therefore, Plaintiff's motion to quash as to IDS is moot.

5

travel to Nebraska for the week, and admitted that he violated the condition of his parole that required him to obtain written permission prior to traveling out of state. (Id. at 21:13-22:13.)

Defendant also seeks evidence that Plaintiff claims was submitted through his website by way of subpoenas to the following entities responsive for the creation and management of that website: (1) Luxury Media Marketing, dated March 2, 2018, seeking "All physical and electronic documents, files, and records in your possession, custody, or control regarding Jeffrey Perrotte and/or www.drinkdriveprison.com including, but not limited to, correspondence with Jeffrey Perrotte and/or his family or agents including, but not limited to, Kristin Peterson; (2) Jim Cook Designs, dated March 2, 2018, seeking "All physical and electronic documents, files, and records in your possession, custody, or control regarding www.drinkdriveprison.com including, but not limited to, correspondence with Jeffrey Perrotte and his family or agents as well as anything submitted to the "Ask Jeff" or "How You Can Help" sections of the website." (MTQ, ECF No. 128, Exs. C, D.)

Defendants have not received any objections from the third parties to whom the subpoenas were directed. (Morgan Decl. ¶ 5.)

2. Plaintiff's Post-Release Earnings Including Work-Related Travel

By seeking compensatory damages arising from Plaintiff's continued incarceration, Plaintiff has put his post-release earnings directly at issue. Plaintiff has produced his post-release W2s, but Defendants are entitled to independently confirm it. See, e.g., Endsley v. Travelers Prop. Cas. Ins. Co., No. 14-cv-00346-LJO-GSA, 2015 WL 2380657, at *2 n.2 (E.D. Cal. May 18, 2015) ("Where a plaintiff has alleged a loss of income because of an insurance company's alleged failure to pay within the terms of its policies, a plaintiff's personal financial information if relevant."); Valdez v. Travelers Indem. Co. of Conn., No. No. 12-cv-04308-SBA (KAW), 2013 WL 3989583, at *4 (N.D. Cal. Aug. 2, 2013), 2013 WL 3989583, at *4 (N.D. Cal. Aug. 2, 2013) ("By alleging damages that include the 'loss of benefits under the Agricultural Lease … and other consequential damages,' Plaintiffs have placed their financial condition at issue."); Sater v. Chrysler Grp. LLC, No. EDCV 14-00070-VAP (DTBx), 2016 WL 3136196, at *1 (C.D. Cal. Mar. 4, 2016) ("By alleging lost business profits, plaintiffs have

placed their financial information at issue...."). Accordingly, Plaintiff's motion to quash the subpoenas relating to his post-release employment compensation is denied.[4]

3. Evidence from Plaintiff's Website

Defendant argues that in his complaint, Plaintiff alleges that "[o]n April 14, 2011, former Warden House Provider, Sue Rudd, emailed Plaintiff's website detailing retaliatory actions by Defendants' Johnson and Leflore [sic] against Plaintiff for engaging in protected conduct." (Compl. at ¶ 47, ECF No. 1.)

In his reply, Plaintiff argues that the request is overbroad and includes electronic communications that are privileged. Plaintiff further indicates that he will turn over the email from Sue Rudd when he is released and can locate it. (Reply at 12-13, ECF No. 147.)

Defendant's subpoenas addressed to Luxury Media Marketing and Jim Cook Designs are overboard and seek information that does not appear relevant. While the Sue Rudd email may be relevant, the subpoena includes information well beyond. Accordingly, Plaintiff's motion to quash the subpoenas addressed to Luxury Media Marketing and Jim Cook Designs is granted as to information sought beyond the email by Sue Rudd.

**C. Motion for Protective Order**

The Court is vested with broad discretion to manage discovery. Dichter-Mad Family Partners, LLP v. U.S., 709 F.3d 749, 751 (9th Cir. 2013) (per curiam); Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005); Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). Pursuant to Rule 26(c)(1), the Court may, for good cause, issue a protective order forbidding or limiting discovery. To establish good cause, the party seeking a protective order bears the burden of showing that specific prejudice or ham will result if no protective order is granted. Phillips ex rel. Estates of Byrd v. Gen'l Motors Corp., 307 F.2d 1206, 1210-11 (9th Cir. 2002). Broad and general allegations of harm do not satisfy the Rule 26(c) test. Beckman Industries, Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992).

---

[4] Defendant's argument that she is entitled to information regarding Plaintiff's work-related travel that was generated in violation of his parole conditions is misplaced because the argument is based on California, not federal law. Nonetheless, Defendant is entitled to any financial information relating to Plaintiff's income after his release from prison.

7

Plaintiff has failed to establish good cause. The mere fact that Plaintiff contends the documents sought are not relevant or that Plaintiff would not like them disclosed, does not demonstrate good cause. Although Plaintiff claims that he was "humiliated" by Defendant's subpoena to ISI, Defendant correctly points out that the company already knew of Plaintiff's criminal history, and participated in Plaintiff's parole board hearings. (MTQ, Ex. B-1, ECF No. 128.) Given the relevancy of the information sought, and the lack of showing of prejudice to Plaintiff, there is no basis for issuance of a protective order.[5]

### D. Motion to Invoke Privilege Under Fifth Amendment

As previously stated, on April 20, 2018, Plaintiff filed a motion to invoke the privilege under the Fifth Amendment of the United States Constitution, in support of his motion to quash. (ECF No. 132.) Plaintiff seeks to invoke the Fifth Amendment to quash the subpoenas directed to post-release employers.

The Fifth Amendment states that "no person … shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend V. The Fifth Amendment privilege applies only to self-incrimination. Couch v. United States, 409 U.S. 322 (1973); see also S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 743-43 (1984) ("[A] person inculpated by materials sought by a subpoena issued to a third party cannot seek shelf in the Self-Incrimination Clause of the Fifth Amendment."). The case of United States v. Lacoste, 800 F.2d 981 (9th Cir. 1986) is instructive to Plaintiff's argument. There, a subpoena was issued to the acting police chief to compel production of documents regarding his predecessor, who had been suspended from the position. The former chief of police moved to quash the subpoenas asserting the Fifth Amendment. The Court held that the subpoena to the acting police chief did not compel anything from the former chief. Lacoste, 800 F.2d at 983-84. It was irrelevant that the former police chief did not want the records produced. Id. Here, the subpoenas were issued to Plaintiff's employer; therefore, Plaintiff's privilege against self-incrimination is not implicated. The cases cited by Plaintiff are inapposite because they involve discovery directed at the *party* invoking

---

[5] Defendant seeks the Court to reimpose the meet and confer requirement. At this juncture, the Court does not find that the meet and confer requirement would be useful given the numerous filings by Plaintiff and the discussions that have taken place between the parties.

the Fifth Amendment privileges, not a third party. Accordingly, Plaintiff's attempt to invoke the Fifth Amendment to quash the subpoenas is without merit.

**E. Motion for Sanctions**

In his motion for sanctions, filed April 20, 2018, Plaintiff seeks defense counsel, Alec Boyd, to pay him $750.00 and reimburse Plaintiff's employer for actual costs related to the subpoenas issued by Defendants which were intended to threaten, intimidate and harass Plaintiff. Plaintiff also contends that on April 13, 2018, Mr. Boyd "threatened" Plaintiff in an attempt to get him to agree to settle the case for $12,000.00.

Plaintiff submits that on April 11, 2018, Plaintiff's wife, Michelle Churis, was contacted by attorney Joel Morgan from the law firm of Clyde & Co., who asked for Plaintiff to call the firm to discuss the case. On April 14, 2018, Plaintiff called Mr. Morgan and he was placed on speaker phone to converse with Mr. Boyd. Plaintiff contends that Mr. Boyd threatened that if he did not accept the settlement offer, Plaintiff would suffer additional problems with parole and not get out of prison.

Defendant submits the following:

> On April 13, 2018, defense counsel held a 30-40 minute conference call with Perrotte in an effort to meet and confer regarding the discovery motion, and to discuss possible settlement. The three way call was facilitated by his wife, Michelle Churis, who was also present on the call.
>
> The call initially focused upon the lack of merit of Perrotte's Motion to Quash pending before the Court. Boyd started the call by explaining to Perrotte why Perrotte's Motion to Quash lacked merit and would be denied. Specifically, Body explained to Perrotte that Defendants would use the subject employment records during the deposition of his parole officers to determine the scope of Perrotte's work-related travel done without the prior approval of his parole officers. Thus, Boyd stated, Defendants would establish that Perrotte could not support his damages claims using illegally earned income. Boyd also asked Perrotte to withdraw his motion to quash.
>
> At no time during the call did Boyd communicate a threat to Perrotte. However, Perrotte became increasingly agitated during the call and stated that he felt threatened by Boyd. Body immediately denied any threat. Instead, Body attempted to mollify Perrotte by assuring him that Boyd had not desire to see Perrotte remain in prison and that any information defense counsel obtained would be used exclusively by the firm in this civil litigation.
>
> Later on, near the end of the call, Boyd conveyed Defendants' opening settlement offer of $12.500. The offer was in response to Perrotte's previous $500,000 demand, which was deemed unsupportable following a careful liability and damages analysis. Defendants based

their opening offer on defense counsels' reasonable settlement value assessment, which took into consideration the evidentiary challenges Perrotte would confront in supporting his claim for lost wages. Boyd never advised Perrotte that any adverse action would be taken against Perrotte if he did not accept Defendants' offer. Moreover, Boyd did not articulate Defendants' offer as a "last best final" offer. Body specifically told Perrotte to take time before responding and left the door open for Perrotte to make a counter. In fact, Perrotte made two counter-demands to Defendants' settlement offer on two separate instances during the call.

(Opp'n, ECF NO. 142 at 7:1-8:14.) (citations omitted).

Based on the declaration by Plaintiff and his wife, Michelle Churis, there is insufficient factual information to support the argument that he was threatened by Mr. Boyd to settle case, particularly given that Plaintiff denied the settlement offer and offered two counter offers. (Boyd Decl. ¶ 12; Morgan Decl. ¶ 10; Lyon Decl. ¶¶ 23, 27, ECF Nos. 143, 144, 145.) Accordingly, there is no basis to impose sanctions, for the reasons explained above. Accordingly, Plaintiff's motion for sanctions is denied.

### F. Motion for Protective Order and to Strike Declaration of Reed Lyon

In his motion, filed on May 21, 2018, Plaintiff seeks a protective order, an extension of time to file a second reply to Defendant's opposition to his motion for sanctions, and to strike the declaration of Reed Lyon. (ECF No. 148.)

1. Extension of Time to File a Second Reply Brief

With regard to Plaintiff's request for an extension of time to file a second reply to Defendant's opposition to his April 20, 2018 motion for sanctions, it is denied. Plaintiff is advised that parties do not have the right to file surreplies and motions are deemed submitted when the time a reply is filed or the time to do has expired. Local Rule 230(l). The Court generally views motions for leave to file a surreply with disfavor. Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a surreply. See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n. 14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir.

10

1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond). In this instance, Plaintiff's motion sets forth no grounds justifying deviation from the standard practice and procedure. Fed. R. Civ. P. 7(b)(1)(B); Local Rule 230(l); Hill, 2005 WL 3031136, at *1. Therefore, Plaintiff's motion is denied.

### 2. Request for Protective Order

Plaintiff seeks a protective order for every prison generated and county jail generated telephone call that Defendants may attempt based on privacy concerns.

The Court is vested with broad discretion to manage discovery. Dichter-Mad Family Partners, LLP v. U.S., 709 F.3d 749, 751 (9th Cir. 2013) (per curiam); Hunt v. Cnty. of Orange, 672 F.3d 606, 616 (9th Cir. 2012). Pursuant to Rule 26(c)(1), the Court may, for good cause, issue a protective order forbidding or limiting discovery. The avoidance of undue burden or expense is grounds for the issuance of a protective order. Fed. R. Civ. P. 26(c).

Plaintiff has not established good cause for issuance of a protective order. As Defendant submits, during the April 13, 2018, telephone call the parties were repeatedly advised that the call was subject to being record and/or monitored. (Lyon Supp. Decl. ¶ 7, ECF No. 150.) Indeed, Plaintiff acknowledges that the calls were monitored and/or recorded in his motion. (ECF No. 148 at 2:11-3:1, 4:9-14.) Plaintiff cannot invoke the confidential martial communication privilege because his telephone communications during his incarceration are not confidential. See, e.g., United States v. Marashi, 913 F.2d 724, 729 (9th Cir. 1990) (martial communication privilege limited to confidential communication) (citing Pereira v. United States, 237 U.S. 1, 6 (1954); Mariscal v. Harrington, No. CV 09-5749 RGK JCG, 2010 WL 3942772, at *8 (C.D. Cal. Aug. 31, 2010) ("An inmate who uses jail or prison telephones with knowledge that his conversation may be recorded and proceeds with his conversation impliedly consents to the monitoring and recording of these calls). Accordingly, Plaintiff's motion for a protection order must be denied.

### 3. Request to Strike Declaration of Reed Lyon

Plaintiff seeks to strike the declaration of Reed Lyon submitted in support of Defendant's opposition to Plaintiff's motion for sanctions. (ECF No. 145.)

As set forth in Mr. Lyon's declaration, he was present for the April 13, 2018 telephone call with Plaintiff. (Lyon Supp. Decl. ¶ 2; Morgan Decl., ECF No. 144, ¶ 3; Boyd Decl., ECF No. 143, ¶ 3; Lyon Decl., ECF No. 145, ¶ 2.) Although Mr. Lyon did not introduce himself on the telephone call, does not render his declaration untruthful or invalid. Plaintiff's unsubstantiated belief that Mr. Lyon was not present on the call is also insufficient to strike his declaration. Accordingly, Plaintiff's motion to strike the declaration of Reed Lyon is denied. See, e.g., Dev v. Donahoe, No. 2:11-cv-2950-JAM-EFB, 2013 WL 5718752, at *12 (E.D. Cal. Oct. 16, 2013), report and recommendation adopted, 2014 WL 556031 (E.D. Cal. Jan. 22, 2014), aff'd, 668 F.App'x 815 (9th Cir. 20160 ("The declarations [submitted by the defendant] have an adequate foundation, are based on her personal knowledge and address relevant facts. The fact that they include testimony unhelpful to [the plaintiff] does not render that testimony inadmissible ...."). Accordingly, Plaintiff's motion to strike the declaration of Reed Lyon shall be denied.

### III.

### ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion to quash the subpoenas is GRANTED IN PART as explained above;
2. Plaintiff's motion for a protective order is denied;
3. Plaintiff's request to invoke the Fifth Amendment right against self-incrimination is denied;
4. Plaintiff's motion for sanctions is denied;
5. Plaintiff's motion for an extension of time to file a second reply is denied;
6. Plaintiff's motion for a protective order is denied; and
7. Plaintiff's request to strike the declaration of Reed Lyon is denied.

IT IS SO ORDERED.

Dated: **January 11, 2019**

_____
UNITED STATES MAGISTRATE JUDGE